Richard HILL, Jr. *v.* STATE of Arkansas

CR 00-921 40 S.W.3d 751

Supreme Court of Arkansas
Opinion delivered March 22, 2001
[Petition for rehearing denied April 26, 2001.*]

* GLAZE, J., concurs. *See* published concurring opinion at 344 Ark. 231-A, 40 S.W.3d 751 (2001). CORBIN, J., not participating.

218

*Arkansas Public Defender Commission*, by: *Llewellyn J. Marczuk* and *Cheryl Upshaw*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

Robert L. Brown, Justice. This appeal by appellant Richard Hill, Jr., is from a judgment of conviction for capital felony murder and attempted aggravated robbery. Hill was sentenced to life imprisonment without the possibility of parole and six years, respectively. He appeals on multiple grounds which include: (1) error by the circuit judge in refusing to give an instruction on felony manslaughter; (2) error by the circuit judge in declining to dismiss the capital felony murder charge because it was too vague; (3) error by the circuit judge in permitting the hearsay testimony of Bobbie Gates as an excited utterance; (4) error by the circuit judge in refusing to suppress his statement given to police officers; and (5) error by the circuit judge when she revealed to the jury that the death penalty had been waived. We conclude that the points raised are without merit, and we affirm.

On September 30, 1997, Hill, who was age sixteen at the time, together with John Powell, Dashone Simms, and Brad Scott formulated a plan to rob the White Oak Package Store in Ouachita County. The four youths had in their possession a .16 gauge shotgun which had been reported stolen by E. W. Moorehead that same day. When they arrived at the package store at about 9:45 p.m., Kenneth Oglesby and Bobbie Gates, who were the two clerks in the store, were in the process of closing. According to Gates, Hill walked up to the store a couple of times and at one point turned around and said: "Are you all coming?" Gates did not recognize Hill as a customer she had ever seen before. She described him as wearing a dark-colored sweatshirt with a hood that he had pulled down over his head. When Hill heard a dog barking inside the store, he retreated.

Gates and Oglesby locked the store. Gates was walking to her mobile home which was adjacent to the store when she saw the

same youth with the hooded sweatshirt. Oglesby walked to his red Dodge pickup and got in. According to the statements given to police by Brad Scott and Dashone Simms, Hill said he wanted the shotgun, and they gave it to him. According to Scott and Simms statements to police, Hill believed that Oglesby had money which he needed to return to Minnesota. Hill ran toward the truck with the shotgun, and Gates heard the tires of the truck "screech" as Oglesby accelerated. Hill fired the shotgun, and the pellet load broke the driver's window, pierced the car seat cloth, and struck Oglesby in the back. He ran his truck off the road and into a ditch. According to the Associate Medical Examiner, Dr. Charles Paul Kokes, Oglesby died because of internal bleeding and a collapsed left lung. Hill maintained that his finger accidentally hit the trigger, and he did not know the shotgun was "already cocked back." After firing the shot, Hill dropped the shotgun and was picked up by his friends in a getaway car. Nothing was taken from the package store.

The four youths were apprehended at various locations by law enforcement officers during the early morning hours of October 1, 1997. They were taken to the Ouachita County Sheriff's office in Camden. All four waived their *Miranda* rights and gave statements to the investigators. Hill was the last accused to give a statement, and that took place at approximately 7:55 a.m. The statement was given to Investigator Glenn C. Sligh and Investigator Jerry Digman of the Sheriff's Office. In the statement, Hill admitted that he shot Oglesby, albeit by accident, and that he was wearing a hooded sweatshirt. He told the police officers that he had had no drugs or alcohol that night.

Hill was charged with attempted aggravated robbery and capital felony murder. On March 23, 1998, he filed an amended motion to suppress the statement on grounds that it was involuntarily given and that he had not knowingly and intelligently waived his *Miranda* rights. A hearing was held, and the motion was denied.

On January 10, 2000, a three-day trial began. At the beginning of the trial, the circuit judge, over defense counsel's objection, permitted the prosecuting attorney to advise the jury that the punishment for capital felony murder was life without parole. At the end of the trial, the jury was instructed on capital felony murder and first-degree felony murder. Hill sought an additional instruction for felony manslaughter based on his claim of accidental murder. The instruction was not given. Hill was convicted, as already stated in this opinion, and sentenced accordingly.

*I. Felony Manslaughter Instruction*

Hill first claims that felony manslaughter is a lesser included offense of capital felony murder and that the circuit judge erred in not giving the instruction when there was a rational basis for doing so. He urges that the law is that an instruction on a lesser included offense should be given, if it is supported by the slightest evidence and cites us to *Kail v. State*, 341 Ark. 89, 14 S.W.3d 878 (2000). He further argues that failure to give an instruction, when warranted, is reversible error. *See Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992).

Hill's evidentiary justification for the instruction is his own statement, where he said the shooting was inadvertent and the fact that his associates in the attempted robbery also told the police officers that Hill had told them it was an accident. This easily qualified as sufficient proof for the instruction, according to Hill, and the question of whether the murder, indeed, was an accident was for the jury to decide.

We begin our analysis by looking at the instructions given for capital felony murder and first-degree felony murder and compare those instructions to the proffered instruction for felony manslaughter. The capital felony murder instruction and the first-degree felony murder instruction given at trial, which are based on our criminal statutes, read as follows:

> Richard Hill is charged with capital murder. To sustain this charge, the State must prove the following things beyond a reasonable doubt:
>
> First: That Richard Hill acting alone or with one or more other persons attempted to commit the crime of robbery; and
>
> Second: That Richard Hill in the course of and in furtherance of that attempt, Richard Hill caused the death of Kenneth Ray Oglesby under circumstances manifesting an extreme indifference to the value of human life.
>
> If you have reasonable doubt of Richard Hill's guilt on the charge of capital murder you will then consider the charge of murder in the first degree.

To sustain this charge, the State must prove the following things beyond a reasonable doubt:

That Richard Hill, acting alone or with one or more persons, committed attempted robbery; and

Second: That in the course and in furtherance of that attempt, Richard Hill caused the death of Kenneth Ray Oglesby under circumstances manifesting extreme indifference to the value of human life.

*See* Ark. Code Ann. §§ 5-10-101(a)(1) and 5-10-102(a)(1) (Repl. 1997).

Hill proffered the following instruction on felony manslaughter, which is also based on our criminal statutes:

To sustain this charge the State must prove beyond a reasonable doubt that:

Acting alone or with one or more persons Richard Hill, Jr. attempted to commit robbery, and in the course of and in furtherance of that crime:

He negligently caused the death of Kenneth Oglesby.

(The term "negligently" as used in this criminal case means more than it does in civil cases. To prove negligence in a criminal case the State must show that Richard Hill, Jr. should have been aware of a substantial and unjustifiable risk that the death would occur. The risk must have been of such a nature and degree that Richard Hill, Jr.'s failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involved a gross deviation from the standard of care that a reasonable person would have observed in his situation.)

*See* Ark. Code Ann. §§ 5-2-202(4) and 5-10-104(a)(4)(A) (Repl. 1997). *See also* AMCI2d 1004(d).

█ Our Criminal Code declares what constitutes a lesser included offense:

(b) A defendant may be convicted of one offense included in another offense with which he is charged. An offense is so included if:

(1) It is established by proof of the same or less than all the elements required to establish the commission of the offense charged; or

(2) It consists of an attempt to commit the offense charged or to commit an offense otherwise included within it; or

(3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish its commission.

Ark. Code Ann. § 5-1-110(b) (Repl. 1997). In addition, our caselaw has set out these same three basic requirements as essential to a determination of lesser-included-offense status. *See, e.g., Byrd v. State,* 337 Ark. 413, 992 S.W.2d 759 (1999); *Brown v. State,* 325 Ark. 504, 929 S.W.2d 146 (1996); *Tackett v. State,* 298 Ark. 20, 766 S.W.2d 410 (1989).[1]

■ In the case before us, we are dealing with capital felony murder where the murder is perpetrated "in the course of and in furtherance of" attempted aggravated robbery. The culpable intent or *mens rea* relates to the crime of the underlying felony — attempted aggravated robbery — and not to the murder itself. *State v. Jones,* 336 Ark. 191, 984 S.W.2d 432 (1999). The same holds true for first-degree felony murder, which qualifies as a lesser included offense of capital felony murder.

■ Hill's proffered instruction on felony manslaughter adds a new element to felony murder that relates to the perpetration of the murder itself. That additional element is negligence, which is defined as the failure to perceive a gross deviation from the standard of care, using the reasonable man standard. On its face, the proffered instruction adds a different concept to the felony-murder mix and, thus, fails to qualify as a lesser included offense under § 5-1-110(b)(1). Nor does it represent an attempted offense under § 5-1-

---

[1] We note that the disjunctive "or" is used in § 5-1-110(b) and the conjunctive "and" is used in our caselaw. That distinction has not been raised in this appeal, and we will not address it.

110(b)(2). And, finally, we cannot say that felony manslaughter qualifies under § 5-1-110(b)(3). Felony manslaughter does not represent a less serious injury to the victim, since death resulted. Nor does it represent a lesser kind of·culpable mental state, since the culpable mental state to perpetrate robbery is the same for capital felony murder and felony manslaughter. In sum, we hold that felony manslaughter is not a lesser included offense of capital felony murder or first-degree felony murder.

■ ■ Our statutes· and cases are clear that the standard of whether there is a rational basis or the slightest evidence for giving an instruction are tied to situations where the proposed instruction is a lesser included offense. *See, e.g., Harshaw v. State,* 344 Ark. 129, 39 S.W.3d 753 (2001); *Fudge v. State,* 341 Ark. 759, 20 S.W.3d 315 (2000); *Kail v. State, supra; Byrd v. State, supra; Brown v. State, supra; Rainey v. State, supra.* In *Rainey,* we quoted the pertinent law as follows:

> When there is a rational basis for a verdict acquitting a defendant of the offense charged and convicting him of an offense included in the offense charged, an instruction on the lesser included offense should be given, and it is reversible error to fail to give such an instruction when warranted. *Sanders v. State,* 305 Ark. 112, 805 S.W.2d 953 (1991); Ark. Code Ann. § 5-1-110(c) (1987). When there is the *slightest* evidence to warrant an instruction on a lesser included offense, it is error to refuse to give it. *See, e.g., Henson v. State,* 296 Ark. 472, 757 S.W.2d 560 (1988); *Robinson v. State,* 269 Ark. 90, 598 S.W.2d 421 (1980) (emphasis added).

310 Ark. at 422, 837 S.W.2d at 455. In short, because we have already concluded that felony manslaughter is not a lesser included offense of capital felony murder, it is unnecessary to decide whether Hill's proof meets either the rational-basis standard under § 5-1-110(c) or the slightest-evidence standard under our cases. There was no abuse of discretion in the circuit judge's failure to give the felony manslaughter instruction.

## II. *Vagueness of Capital Murder Charge*

Hill next asserts that the capital felony murder charge should have been quashed by the circuit judge because it was unconstitutionally vague. The gravamen of this argument is that the jury instructions on capital felony murder and first-degree felony murder, which are based on the criminal statutes, are identical. Under

both instructions, as already set out in this opinion, the elements of the respective crimes are:

(1) attempted robbery, and
(2) in the course and furtherance of that attempt, Hill caused the death of Kenneth Oglesby under circumstances manifesting an extreme indifference to the value of human life.

*See* Ark. Code Ann. § 5-10-101(a)(1) (Repl. 1997) (capital felony murder); Ark. Code Ann. § 5-10-102(a)(1) (Repl. 1997) (first-degree felony murder). Before instructing the jury on first-degree felony murder, the instruction read: "If you have reasonable doubt of Richard Hill's guilt on the charge of capital murder you will then consider the charge of murder in the first degree[.]"

■ The State maintains that this issue has been largely decided by this court in previous cases. We agree. Hill is raising an overlap argument between capital felony murder and first-degree felony murder that has been rejected by this court on numerous occasions. *See, e.g, Carmichael v. State,* 340 Ark. 598, 12 S.W.3d 225 (2000); *Coulter v. State,* 304 Ark. 527, 804 S.W.2d 348 (1991), *cert. denied* 502 U.S. 829 (1991); *Cromwell v. State,* 269 Ark. 104, 598 S.W.2d 733 (1980). In *Coulter,* we acknowledged that this court has consistently rejected the overlap argument.

■ Specifically, in *Cromwell* this court considered a void-for-vagueness argument mounted against the two felony-murder statutes and the circuit judge's instructions to the jury. We stated that underlying the vagueness argument in *Cromwell* was the argument that the sameness of the two statutes enabled the prosecutor to arbitrarily decide to charge the defendant with either capital felony murder or first-degree felony murder without any guidance or standard from the General Assembly. In holding against the defendant/appellant on the arbitrariness point, we said:

> Moreover, the prosecutor or grand jury is often compelled to choose one or two or more offenses, no matter how precise the statutes may be. For example, the conflicting testimony of eyewitnesses may, depending on their varying (sic) credibility, establish capital murder if the accused committed robbery but only murder in the first degree if he committed a lesser felony such as theft of property, battery, or aggravated assault. §§ 41-2103, -2203, -1601, and -1604. There can be no constitutional objection to the exercise of a reasonable discretion in that situation.

*Cromwell*, 269 Ark. at 107, 598 S.W.2d at 734.

■ Hill's argument in the instant case is somewhat convoluted. He urges that the capital felony murder charge should have been dismissed by the circuit judge because of the manner in which it was presented to the jury in conjunction with the first-degree felony murder instruction. He first made the argument to the circuit judge in the form of a motion that was denied. He then renewed it as part of his motion for a directed verdict, and it was again denied. At its essence, Hill appears to be arguing vagueness, the lack of a differentiating standard proposed by the General Assembly, and the risk of an arbitrary charge by the prosecutor or jury verdict. All of these arguments were disposed of in *Cromwell* and its progeny.

Furthermore, Hill was convicted of capital felony murder, even though the jury was instructed on both capital felony murder and first-degree felony murder. The jury clearly was convinced that Hill was guilty of the higher charge. There is, too, the point that different grades of punishment between the capital offense and the first-degree offense give the jury the option of assessing a lesser penalty. *See Jones v. State*, 328 Ark. 307, 942 S.W.2d 851 (1997); *Cromwell v. State, supra*. Even with bifurcated trials for the guilt phase and penalty phase, the instruction in the guilt phase indicates a difference in degree between capital murder and first-degree murder.

■ There was no error in the circuit judge's refusal to dismiss the capital felony murder charge.

### III. Excited Utterance

Hill next contends that the circuit judge erred in admitting the hearsay statement of Bobbie Gates as an excited utterance. This, he claims, prevented him from confronting and cross-examining Gates, who was deceased at the time of trial. Hill's hearsay objection was made during the testimony of Investigator Sligh at the point when he began describing what Gates told him thirty minutes after the murder. At that time, Investigator Sligh described her as "visibly shaken and upset"and looking as if "she had just been through an ordeal."

■ Our Rules of Evidence prevent the admissibility of hearsay evidence. Ark. R. Evid. 802. One exception to the rule, however, is a statement relating to "a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." Ark. R. Evid. 803(2). Investigator Sligh's description of Gates, within thirty minutes of the murder is a description of a person under stress or excitement. This, of course, is readily understandable as she had just witnessed the murder of her co-worker.

The delay of thirty minutes in interviewing Gates does not automatically render the excited-utterance exception inoperable. *See Johnson v. State*, 326 Ark. 430, 934 S.W.2d 179 (1996). We consider Ms. Gates's condition, as described by Investigator Sligh, as one that would give vent to a spontaneous or impulsive statement. *Id.* We also do not believe that the second statement taken by Investigator Sligh from Gates nine days later negates the excited utterance. Investigator Sligh testified that the information obtained from Gates on both occasions was essentially the same. The diagram of the crime scene with the position of Kenneth Oglesby's truck was no more than a demonstrative exhibit of what the investigator had learned from Gates, from his investigation of the area, and from other witnesses.

■ There was no abuse of discretion by the circuit judge in allowing the excited utterances of Gates into evidence.

### IV. Suppression

For his next point, Hill claims that his statement given to police officers on the morning of October 1, 1997, was involuntary and that his waiver of his *Miranda* rights was not knowingly and intelligently made. Thus, he claims that the circuit judge erred in denying his motion to suppress. He premises his arguments on these allegations:

- He had just turned sixteen at the time of the murder and had no family in Arkansas.

- He had no prior experience with the criminal justice system.

- He had been drinking gin and smoking marijuana the night of the killing.

- His I.Q. was 89, and he had the listening comprehension of a fourth grader and the reading comprehension of a fifth grader.

- He was frightened by Sergeant Easter when he slammed his fist against a file cabinet and called him a liar.

- At one point five police officers were in the interrogation room and he was intimidated.

- Police officers used the ploy of "good cop-bad cop" with Sergeant Easter and Investigator Sligh performing the respective roles.

The State responds by emphasizing the testimony of Investigator Sligh and Investigator Digman that Hill waived his *Miranda* rights in writing after their full explanation of what those rights were. The State adds that Dr. William Peel, a forensic psychiatrist, testified at Hill's juvenile-transfer hearing that he was "of low average intelligence" but understood the nature of the charges against him and the essential components of the criminal justice system. The State also emphasizes that Investigator Sligh and Investigator Digman disputed that Hill was under the influence of drugs or alcohol, and credibility of the witnesses is a matter for the circuit judge to weigh. Finally, the State underscores that Hill's statement shows no indication that he was impaired or under duress, or that his will had been overborne.

We recently set out the standards for examining the legitimacy of custodial statements:

> We review a trial court's ruling on a motion to suppress by making an "independent determination based upon the totality of the circumstances, viewing the evidence in a light most favorable to the State." *Wright v. State*, 335 Ark. 395, 403-04, 983 S.W.2d 397, 401 (1998) (citing *Tabor v. State*, 333 Ark. 429, 971 S.W.2d 227 (1998)). The ruling will only be reversed if it is clearly against the preponderance of the evidence. *See id.* An accused's statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that the custodial statement was given voluntarily and was knowingly and intelligently made. *See Smith v. State*, 334 Ark. 190, 974 S.W.2d 427 (1998) (citing *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997). We make an independent review of the totality of the circumstances surrounding the confession to determine whether the appellant knowingly, voluntarily, and intelligently waived his

constitutional rights. *See id.* (citing *Davis v. State,* 330 Ark. 76, 953 S.W.2d 559 (1997)).

*Barcenas v. State,* 343 Ark. 181, 184, 33 S.W.3d 136, 138-139 (2000). Where coercion is alleged, we have established the test that to be considered voluntary, the statement must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Sanford v. State,* 331 Ark. 334, 345, 962 S.W.2d 335, 341 (1998). The proper question is whether the will of the accused has been overborne. *United States v. Pelton,* 835 F.2d 1067 (4th Cir. 1987). Coercive police activity is a necessary component of an involuntary statement, and there must be an essential link between the coercive behavior of the police and the resulting confession of the accused for suppression to take place. *Landrum v. State,* 326 Ark. 994, 936 S.W.2d 505 (1996).

■■ ■ We conclude on this point that the circuit judge's order denying suppression was thorough and well reasoned:

> The interview of Richard Hill was the last one conducted by investigators Glenn Sligh and Jerry Digman of the Arkansas State Police. Both officers testified his Miranda warnings were read to him and explained to him. Hill never indicated he did not understand his rights as explained to him. He initialed each separate right and signed the waiver of rights form. Further, the defendant denied any use of either alcohol or drugs on the previous night.

> The Court is of the opinion the defendant was adequately advised of his rights and that he understood them. The Court further finds he was given the opportunity to ask questions and did not do so. Both the school records and the testimony of Dr. Wetherby indicate Richard Hill would ask questions when he was confused or did not understand the material. The Court simply does not believe the defendant did not comprehend what he was doing when he voluntarily waived his rights.

> . The Court would further note that while Dr. Wetherby places the defendant's reading comprehension at a fifth grade level and his listening comprehension at a fourth grade level, his standardized test scores assess him as average in almost every category. There simply is ample evidence to determine he was capable of understanding his rights and of making a voluntary decision to waive those rights.

In addition, the Court does not find he was forced to make a statement due to intimidation or coercion. While the conduct of Detective Easter in slamming his hand on a file cabinet was out of line, it did not act as coercive or rise to the level of intimidation. Easter was immediately asked to leave by Inv. Sligh and did so. He was not in the room when the defendant gave his taped statement. In addition, there was nothing overly oppressive about the number of officers in the room or the placement of the officers.

The defendant denied any drug or alcohol use on the night of September 30 or early morning hours of October 1, 1997. Both Inv. Sligh and Digman testified they neither observed any evidence of impairment or smelled any evidence of drug or alcohol use. The court does not believe the defendant failed to understand his constitutional rights due to the use of any substances.

We cannot say that the judge was clearly erroneous in her findings. Furthermore, this court has previously held that defendants, age sixteen or fifteen, are capable of waiving their *Miranda* rights. *See, e.g., Sanford v. State, supra; Oliver v. State,* 322 Ark. 8, 907 S.W.2d 706 (1995); *Douglas v. State,* 286 Ark. 296, 692 S.W.2d 217 (1985). The suppression point is without merit.

### V. Death-Penalty Waiver

As a final point, Hill argues that it was reversible error for the circuit judge to permit the jury to learn that the State had waived the death penalty for this capital felony murder. Hill urges that this lessened the jury's sense of responsibility and assuaged certain jurors' doubts about the death penalty. He further maintains that this suggested that the State had already granted Hill mercy and, thus, the State was currying favor with the jury. He adds that the jury was told of the State's waiver before there was even a finding of guilt.

We are not persuaded that the case adduced by Hill, *Leaks v. State,* 339 Ark. 348, 5 S.W.3d 448 (1999), supports his argument. The *Leaks* case involved an allusion by the prosecutor in his closing argument to a higher degree of murder (capital murder) for which the defendant had not been charged but, according to the prosecutor, could have been found guilty. The prosecutor in *Leaks* added that the defendant had already received a "break" from the State because he was not charged with capital murder. We said in *Leaks*

that the argument by the prosecutor was improper, and we reversed the judgment of conviction and remanded the case.

 The *Leaks* facts are not comparable to what is before us in the instant case. We hold that there was no abuse of discretion by the circuit judge in allowing the reference to the death-penalty waiver to be made by the prosecutor.

The record in this case has been reviewed for other reversible error in accordance with Ark. Sup. Ct. R. 4-3(h), and none has been found.

Affirmed.