Sherman JOHNSON *v.* STATE of Arkansas

CA CR 00-1187                                    55 S.W.3d 298

Court of Appeals of Arkansas
Division III
Opinion delivered September 19, 2001
[Petition for rehearing denied October 24, 2001.]

*William Owen James* and *Clay T. Buchanan,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Vada Berger,* Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Sherman Johnson was convicted by a jury of committing aggravated robbery and a terroristic act. He was sentenced to ten years in the Arkansas Department of Correction. Mr. Johnson now appeals, arguing that

the trial court erred in failing to suppress a statement he made to the police, and that absent this statement there was insufficient evidence to corroborate his accomplices' testimony and support his convictions.

When the sufficiency of the evidence is challenged on appeal, we review this issue before addressing other alleged trial errors. *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000). In determining whether a finding of guilt is supported by substantial evidence, we review the evidence, *including* any that may have been erroneously admitted, in the light most favorable to the verdict. *Willingham v. State*, 60 Ark. App. 132, 959 S.W.2d 74 (1998). Therefore, in deciding whether there was substantial evidence to support the verdicts against Mr. Johnson, we will consider all of the evidence, including the statement that he asserts was erroneously admitted.

At the jury trial, the victim, Phillip Isgrig, testified on behalf of the State. He stated that he was driving a mail route on June 30, 1999, when three men who were running toward him caught his attention. According to Mr. Isgrig, two of the men had bandanas covering their faces and one wore a ski mask. Shortly thereafter, Mr. Isgrig saw a person raise a pistol and fire two shots, one of which struck his vehicle.

Darcy Smith, an accomplice to the criminal activity, testified that it was Mr. Johnson's idea to rob the mailman, and that he and Jerrod Watson agreed to assist. He testified that they all gave chase and that Mr. Johnson fired shots at Mr. Isgrig.

Mr. Watson, another accomplice, stated that it was Mr. Smith's idea to commit the robbery. However, he acknowledged that he and Mr. Johnson both participated and carried guns. Mr. Watson testified that he heard two shots fired, although he did not see Mr. Johnson fire the shots.

Detective Lynda Keel also testified for the State. She indicated that, after signing a waiver-of-rights form, Mr. Johnson gave a taped statement. The statement was played for the jury, and in the statement Mr. Johnson acknowledged being with Mr. Smith and Mr. Watson when they were planning to rob the mailman. Mr. Johnson admitted that he went along with the plan to commit the robbery. He also admitted that he knew that what he was doing was wrong. However, Mr. Johnson denied having a gun, and maintained that it was Mr. Smith who fired the shots.

We first address Mr. Johnson's argument that there was insufficient evidence to sustain his convictions. He correctly asserts that, pursuant to Ark. Code Ann. section 16-89-111(e)(1) (1987), a conviction cannot be had in any felony case upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. Mr. Johnson argues that there was insufficient corroboration of his accomplices' testimony, and consequently his convictions must be reversed.

A person commits aggravated robbery if, while armed with a deadly weapon, he threatens to immediately employ physical force upon another with the purpose of committing a theft. *See* Ark. Code Ann. § 5-12-103(a)(1) (Repl. 1997). A person commits a terroristic act if he shoots, with the purpose to cause injury to persons or property, at a conveyance which is being operated or occupied by passengers. *See* Ark. Code Ann. § 5-13-310(a)(1) (Repl. 1997). We hold that there was sufficient corroboration to support Mr. Johnson's convictions for both offenses.

The test for determining the sufficiency of evidence to corroborate the testimony of an accomplice is whether, if the testimony of the accomplice were completely eliminated from the case, other evidence independently establishes the crime and tends to connect the accused with its commission. *Pickett v. State*, 55 Ark. App. 261, 935 S.W.2d 281 (1996). The corroborating evidence need not be sufficient standing alone to sustain the conviction; however, proof that merely places the defendant near the scene of a crime is not sufficient corroborative evidence of his connection to it. *Id.*

In the instant case, the corroborating evidence was primarily supplied by Mr. Johnson's statement to the police. He admitted to participating in criminal activity, as opposed to mere presence at the scene. Without considering the accomplices' testimony, the victim's testimony and appellant's statement established that the crimes were committed, and appellant's statement connected him with the crimes. Mr. Smith testified that Mr. Johnson both planned the robbery and fired the shots, and when considered with the corroborating evidence, this testimony supports the jury's finding that Mr. Johnson committed both aggravated robbery and a terroristic act. While Mr. Johnson submits that Mr. Smith's testimony was unreliable because it was given in exchange for leniency and was inconsistent with that elicited from the other accomplice, we have repeatedly held that the determination of credibility issues

is left to the trier of fact. *See Byrum v. State*, 318 Ark. 87, 884 S.W.2d 248 (1994).

We next address Mr. Johnson's argument that the trial court erred in refusing to suppress his statement to the police. At the suppression hearing, it was established that Mr. Johnson had warrants out for his arrest when he voluntarily presented himself to the police station nine days after the robbery. Detective Charles Ray testified that he read Mr. Johnson the waiver-of-rights form, which Mr. Johnson understood and signed. He then contacted Detective Keel, who arrived thirty-five minutes later and reread Mr. Johnson his rights, which he "appeared to understand." After speaking with Mr. Johnson and listening to his version of the events, Detective Keel taped a statement. The pertinent portion of the tape recording is as follows:

> KEEL: Sherman, I have in front of you our standard Little Rock Police Department Miranda rights form which was read to you at 2150 hours by Detective Charles Ray. You — the top portion of the form indicates that you have 12 years of education and you can read and write and he advised you of your rights. Do you understand those rights? I need you to speak.

> JOHNSON: Yes ma'am.

> KEEL: Okay. Is this your signature on the form?

> JOHNSON: Yes ma'am.

> KEEL: Do you have any questions about your rights?

> JOHNSON: Yeah, like uh, the right to remain silent.

> KEEL: Uh huh.

> JOHNSON: *(Inaudible)* and he told me to come, well he told me that when I was going to turn myself in he told me to come up here, he said just tell y'all my name and my address.

> KEEL: Why didn't you say that earlier?

> JOHNSON: No cause I ain't find — I just went through when I turned myself in then I just went on and told y'all the statement.

KEEL: Okay so you gave us a statement (*Inaudible*) okay that's fine and this is your signature? Okay the bottom portion of the form is a waiver of rights which pertains to giving us a statement. You signed this form here indicating that you did want to give us a statement. You've been talking to us briefly about what happened.

JOHNSON: Yes ma'am.

KEEL: You understand that we are taking a taped statement and you're doing this on your own will, is that correct?

JOHNSON: Yes ma'am.

KEEL: Okay, is this your signature on the form?

JOHNSON: Yes ma'am.

KEEL: Okay. You do understand that we're taking a recorded statement?

RAY: You're nodding your head again.

JOHNSON: Oh, yes ma'am.

RAY: Okay.

KEEL: All right. Start at the beginning and tell me where you were on the afternoon that this happened?

Following the above exchange, Mr. Johnson gave an account of the criminal activity that transpired on the day at issue.

Mr. Johnson argues that his statement should have been suppressed for two reasons. First, he argues that he invoked his Fifth-Amendment right to remain silent and the questioning by Detective Keel impermissibly continued. Second, he contends that any waiver of his right to remain silent was not given knowingly and intelligently.

Mr. Johnson asserts that he raised a question as to his right to remain silent when, after being asked whether he had any questions about his rights, he replied, "Yeah, like uh, the right to remain silent." In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that if an individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the

interrogation must cease. Mr. Johnson maintains that since Detective Keel continued the interrogation after he invoked his right to remain silent, his statement was erroneously admitted.

Mr. Johnson also cites *Smith v. Illinois*, 469 U.S. 91 (1984). In that case, while a police officer was reading *Miranda* rights to the appellant, he informed appellant of his right to have a lawyer present, to which appellant responded, "Uh, yeah, I'd like to do that." The interrogation continued at the officer's coaxing, and appellant gave incriminating statements. In reversing his conviction, the Supreme Court announced that the appellant invoked his right to counsel and held that an accused's post-request responses to further interrogation may not be used to cast doubt on the clarity of the initial request for counsel. Mr. Johnson argues that the instant case is analogous to *Smith v. Illinois, supra*, and that for purposes of determining whether or not he invoked his right to silence, we are not permitted to consider any of his responses subsequent to when he initially asserted the right.

In the alternative, Mr. Johnson argues that even if he waived his right to remain silent, his waiver was not knowing and intelligent. He notes that statements made in police custody are presumed to be involuntary, and the burden is on the State to prove the statement was voluntary and that any waiver of rights was knowingly and intelligently made. *See Miranda v. Arizona, supra*. Mr. Johnson argues that the State failed to prove that he knowingly and intelligently waived his right to remain silent because, during his interrogation, Detective Keel continued the questioning without again explaining his rights to him or further inquiring into his uncertainty.

■ We review a trial court's ruling on a motion to suppress by making an independent determination based on the totality of the circumstances, viewing the evidence in the light most favorable to the State. *Hill v. State*, 344 Ark. 216, 40 S.W.3d 751 (2001). The ruling will only be reversed if it is clearly against the preponderance of the evidence. *Id.* In the case at bar, we hold that the trial court's denial of Mr. Johnson's motion to suppress was not clearly against the preponderance of the evidence.

■ In *Davis v. United States*, 512 U.S. 452 (1994), the United States Supreme Court held that a suspect's statement during interrogation that "Maybe I should talk to a lawyer" did not require cessation of the questioning because a suspect must unambiguously request counsel. In *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555

(1996), the Arkansas Supreme Court held that there is no distinction between the right to counsel and the right to remain silent with respect to the manner in which it must be effected. In *Smith v. Illinois, supra*, the appellant specifically stated that he would like to have a lawyer; however, in the instant case, Mr. Johnson responded to Officer Keel's question "Do you have any questions about your rights?" by stating, "Yeah, like uh, the right to remain silent." This ambiguous response, viewed in the light most favorable to the State, as we are required to do, *see Hill v. State, supra*, was merely an acknowledgment by Mr. Johnson that he understood the kind of "rights" to which the officer was referring. But even if viewed in the light most favorable to appellant, this response was no more than an indication that appellant had a question, not that he was specifically asserting his right to remain silent. Consequently, the right was never invoked and there was nothing improper about continuation of the custodial interrogation.

Nor are we persuaded that the trial court erred in finding that Mr. Johnson gave a knowing and intelligent waiver of his rights. In making this determination, we review the totality of the circumstances surrounding the waiver including the age, education, and intelligence of the defendant. *Conner v. State*, 334 Ark. 457, 982 S.W.2d 655 (1998). The circumstances of this case show that Mr. Johnson, who had completed twelve years of education, came to the police station on his own volition and was twice read his rights from a waiver-of-rights form, and he signed the rights form and informed the police that he understood every right on the piece of paper. Mr. Johnson then gave a statement to Officer Keel, and after he agreed to have his statement recorded, Officer Keel inquired again as to whether he had any questions about his rights and he stated, "Yeah, like uh, the right to remain silent." He then proceeded to explain that he was told by someone to turn himself in and give his name and address, and reaffirmed that he agreed of his own will to give a taped statement. Contrary to appellant's argument, we may consider statements made during the interrogation that were made after appellant's alleged inquiry into his rights because Mr. Johnson never expressly asserted his right to remain silent, and in deciding this issue, we must inquire into all of the circumstances surrounding the interrogation. *See Fare v. Michael C.*, 442 U.S. 707 (1979). Under the totality of the circumstances, we find no error in the trial court's finding that Mr. Johnson was aware of his right to remain silent and gave a knowing and intelligent waiver of that right.

Affirmed.

BIRD and VAUGHT, JJ., agree.