# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1174

_____

United States of America

*Plaintiff - Appellee*

v.

Lashawn Deron Harris

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 14, 2019
Filed: February 21, 2020

_____

Before BENTON, MELLOY, and KELLY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Lashawn Deron Harris pleaded guilty to distributing methamphetamine. The district court determined Harris qualified as a career offender pursuant to U.S.S.G. § 4B1.1(a) because he had two prior convictions for "crimes of violence": Arkansas Code § 5–13–310 (2002) (Terroristic Act) and Arkansas Code § 5–13–202(a) (2006) (Second Degree Battery). We reverse.

I.

Harris does not challenge his conviction. The career-offender determination resulted in an adjusted offense level of thirty one, a criminal history category VI, and an advisory Guidelines range of 188–235 months. Without application of the career-offender Guidelines, his advisory range would have been 87–108 months. The district court imposed a sentence of 240 months, identifying the sentence as an upward variance. The court cited concerns about community safety and evidence concerning firearm-related incidents for which Harris either was not charged or was charged but not prosecuted.

Harris appeals, challenging the career-offender determinations. He also challenges his ultimate sentence as unreasonable and argues the district court improperly departed upwardly without notice.

II.

We review the district court's crime-of-violence determinations de novo. See United States v. Bearden, 780 F.3d 887, 895 (8th Cir. 2015). "The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ." U.S.S.G. § 4B1.2(a). In determining whether Harris's convictions are for crimes of violence, "we look, categorically, at the generic elements of the offense, not the facts of [Harris's] conviction." United States v. Doyal, 894 F.3d 974, 975 (8th Cir. 2018). If the statute lists alternative methods of committing the offense, we must determine whether the statute lists alternative elements that define separate crimes and must be found by a jury or whether the statute merely "specifies various *means* of fulfilling the crime's elements." Id. If the statute lists alternative elements, only some of which qualify as crimes of violence, we describe the statute as overinclusive and

divisible, and we apply the modified categorical approach. See Mathis v. United States, 136 S. Ct. 2243, 2253 (2016). Under this approach, we look at a limited body of qualifying materials for the narrow purpose of determining which set of elements were at issue in the prior conviction. See Shepard v. United States, 544 U.S. 13, 26 (2005) (identifying qualifying materials). When a statute merely lists alternative means, however, and where at least one of those means does not qualify as a crime of violence, the statute is overinclusive but non-divisible. A prior conviction for a non-divisible but overinclusive offense is not a crime of violence. Mathis, 136 S. Ct. at 2256 (for such a statute, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution").

At the time Harris committed a terroristic act, Arkansas defined the crime as follows:

(a)  For the purposes of this section, a person commits a terroristic act when, while not in the commission of a lawful act:
     (1)  He shoots at or in any manner projects an object with the purpose to cause injury to persons or property at a conveyance which is being operated or which is occupied by passengers; or
     (2)  He shoots with the purpose to cause injury to persons or property at an occupiable structure.
(b)  (1)  Any person who shall commit a terroristic act as defined in subsection (a) of this section shall be deemed guilty of a Class B felony.
     (2)  Any person who shall commit a terroristic act as defined in subsection (a) of this section shall be deemed guilty of a Class Y felony if the person, with the purpose of causing physical injury to another person, causes serious physical injury or death to any person.

Ark. Code Ann. § 5-13-310 (2002).

Harris argues that his Class B felony conviction for committing a terroristic act under Ark. Code Ann. § 5-13-310(a), (b)(1) (2002) is not a crime of violence because it does not have "as an element the use, attempted use, or threatened use of physical force against the person of another" as required by U.S.S.G. § 4B1.2(a)(1). To be convicted under this statute, the defendant must act "with the purpose to cause injury to persons or property." Ark. Code Ann. § 5-13-310(a)(1), (a)(2). Harris asserts that because this can be satisfied with a purpose to injure *property*, rather than a purpose to injure *persons*, the offense does not categorically have as an element "the use, attempted use, or threatened use of physical force *against the person of another*." U.S.S.G. § 4B1.2(a)(1) (emphasis added).

"When analyzing which words or phrases of a statute form the elements of a crime, courts may look to the statute of prior conviction, state court decisions, and, as a last resort, 'the record of a prior conviction itself.'" United States v. McMillan, 863 F.3d 1053, 1057 (8th Cir. 2017) (quoting Mathis, 136 S. Ct. at 2256). The language of the Class B felony's *mens rea* requirement, standing alone, is inconclusive. When considered in context of the potential punishment for the offense, the statutory language suggests the *mens rea* alternatives are means rather than elements. The Class B felony carries a uniform punishment of 5 to 20 years of imprisonment regardless of whether it is committed with a purpose to injure persons or a purpose to injure property. See Ark. Code Ann. § 5-4-401(a)(3) (2002); McMillan, 863 F.3d at 1057 ("The text of [a] statute 'does not provide helpful guidance' as to whether the phrase 'person or property' lists alternative means or alternative elements [where] 'there is . . . a uniform punishment for commission of' [the offense]." (quoting United States v. McArthur, 850 F.3d 925, 938 (8th Cir. 2017))); see also United States v. Coleman, 918 F.3d 592, 594 (8th Cir. 2019) ("If statutory alternatives carry different punishments, then . . . they must be elements." (alteration in original) (quoting Mathis, 136 S. Ct. at 2256)).

Arkansas case law, too, suggests that the Class B felony's *mens rea* requirement is not divisible. See McMillan, 863 F.3d at 1057 (we may look to state court decisions in "analyzing which words or phrases of a statute form the elements of a crime"). There appears to be no state court decision directly on point. But Arkansas courts generally discuss the "persons or property" phrase without distinguishing between the two components.[1] The failure to specify whether the jury must find that the defendant acted with "the purpose of causing injury to another person or other persons" or "the purpose of causing damage to property" suggests that these are alternative means of satisfying a single *mens rea* element rather than separate elements of different crimes. See Mathis, 136 S. Ct. at 2248 (noting that elements "are what the jury must find beyond a reasonable doubt to convict the defendant"); Descamps v. United States, 570 U.S. 254, 272 (2013) ("A prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives.").

_____

[1]See, e.g., Stephenson v. State, 282 S.W.3d 772, 776 (Ark. 2008) ("[A] person commits a terroristic act if, while not in the commission of a lawful act, and with the purpose of causing injury to persons or property, he shoots at a vehicle that is being operated or that is occupied by another person."); Ealy v. State, 511 S.W.3d 355, 357 (Ark. Ct. App. 2017) ("The plain language of the statute provides that the necessary intent, or goal of the action, is the purpose to cause injury to another person or damage to property . . . ."); Starling v. State, 468 S.W.3d 294, 296 (Ark. Ct. App. 2015) ("A person commits a terroristic act if, while not in the commission of a lawful act, the person: shoots at or in any manner projects an object at a conveyance which is being operated or which is occupied by another person with the purpose to cause injury to another person or damage to property."); Butler v. State, 371 S.W.3d 699, 702 (Ark. Ct. App. 2009) ("[A] person commits a terroristic act if, while not in the commission of a lawful act, the person shoots at or in any manner projects an object with the purpose to cause injury to another person or damage to property at a conveyance that is being operated or that is occupied by another person."); Johnson v. State, 55 S.W.3d 298, 301 (Ark. Ct. App. 2001) ("A person commits a terroristic act if he shoots, with the purpose to cause injury to persons or property, at a conveyance which is being operated or occupied by passengers.").

Model jury instructions reinforce this interpretation. See McMillan, 863 F.3d at 1057 ("We may use a state's model jury instructions to 'reinforce' our interpretation of the means or elements inquiry." (citation omitted)); See Ark. Model Jury Instructions–Criminal (AMCI 2d 1312) (2002) (listing persons and property together without parentheses, brackets, or options for the jury or the court to distinguish between the alternatives). The government argues the opposite, asserting that Arkansas's jury instructions show that the Class B felony contains elements rather than means. The government, however, cites to current jury instructions that are applicable to a later version of the Arkansas terroristic act statute. The instructions applicable to Harris's actual 2002 offense, in contrast, suggest that injury to persons and injury to property are alternative means rather than elements.

Further, we note that a terroristic act can also qualify as a Class Y felony, carrying a punishment of 10 to 40 years of imprisonment, if the defendant acts "with the purpose of causing *physical injury* to another person" and "causes serious physical injury or death to any person." Ark. Code Ann. §§ 5-4-401(a)(1) & 5-13-310(b)(2) (2002) (emphasis added). The Arkansas Criminal Code expressly defines "physical injury" and "serious physical injury."[2] The Arkansas Criminal Code does not define the simple term "injury," as used in the Class B felony. Ark. Code Ann. § 5-13-310(a)(1) & (a)(2). The use of "injury" in the Class B felony's *mens rea* and "physical injury" in the Class Y felony's *mens rea* suggests that the requirements are different. The most natural interpretation is that "injury" includes both physical and

---

[2]"Physical injury" means the: "(A) Impairment of physical condition; (B) Infliction of substantial pain; or (C) Infliction of bruising, swelling, or visible marks associated with physical trauma." Ark. Code Ann. § 5-1-102(14) (2002). "Serious physical injury" means "physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ . . . ." Id. § 5-1-102(19).

non-physical injury. The Class Y felony provision, therefore, takes a subset of Class B felonies and subjects that subset to greater punishment only if the *mens rea* is further limited to a purpose to cause "physical injury to another person" and if "serious physical injury" or "death" actually results. Although the Class B felony's intent to cause "injury to persons" and the Class Y felony's intent to cause "physical injury" may in many instances overlap, they do not necessarily overlap in every case.

Even if the phrase "injury to persons" in the Class B felony could be deemed synonymous with the phrase "physical injury to another person" in the Class Y felony, the difference in punishments between the Class B and Class Y felonies does not support the conclusion that the different alternatives wholly contained in the Class B felony, "persons" and "property," are elements rather than means. It is true that, "[i]f statutory alternatives carry different punishments, then . . . they must be elements." Mathis, 136 S. Ct. at 2256. But the "statutory alternatives" that carry different punishments here are the Class B and Class Y felonies, not the different *mens rea* alternatives of the Class B felony for which Harris was convicted. The Class Y felony is a distinct crime. The fact that the Class Y felony requires a "purpose to cause physical injury to another person" says nothing about whether the purpose to cause "injury to persons" and the purpose to cause "injury to property" are elements or means of the separate crime defined as a Class B felony. A statute may list different mental states as "interchangeable means of satisfying a single *mens rea* element," Mathis, 136 S. Ct. at 2253 n.3, and that is what the Class B felony does here.

Finally, the Shepard documents for Harris's conviction also support the conclusion that the Class B felony's *mens rea* requirement is indivisible. See McMillan, 863 F.3d at 1057 (we may consider, "as a last resort, the record of a prior conviction itself" in analyzing which words or phrases of a statute form the elements of a crime). The information alleges that Harris did, "with the intent to cause injury, shoot at a vehicle while the victim . . . was standing next to it, said vehicle belonging

-7-

to the victim." The object of the defendant's intent is not identified. Instead, the information alleges only an "intent to cause injury," without specifying whether the intent was to injure "persons" or "property." Use of the word "victim" is not dispositive. A person could equally be considered a "victim" of a crime committed against her property (*i.e.*, her vehicle) as against her person.

Ultimately, the statutory language is inconclusive, state-court decisions "fail[] to provide clear answers," and the record materials do not "speak plainly." Mathis, 136 S. Ct. at 2256–57. At each turn, the available materials suggest that the "injury to persons" and "injury to property" components of the Class B felony's *mens rea* requirement are different means of satisfying a single *mens rea* element and not alternative elements defining different crimes. Therefore, the categorical approach's "demand for certainty" has not been met. Id. (citation omitted).[3]

We note that our court has reached a different outcome as to a similarly titled, but differently structured, Arkansas statute. In United States v. Myers, we held the Arkansas felony offense of terroristic *threatening*, Ark. Code Ann. § 5-13-301(a)(1)(A) (1995), qualified as a crime of violence. 928 F.3d 763 (8th Cir. 2019), petition for cert. filed, (U.S. Nov. 22, 2019) (19-6720). There, the relevant statutory language provided:

> (a)(1) A person commits the offense of terroristic threatening in the first degree if:

---

[3]Even if we assume the statutory subsection at issue is divisible and apply the modified categorical approach, the information filed against Harris does not tell us which alternative *mens rea* formed the basis of his charge and conviction. As noted, both property and a person are named in the information, but Harris was charged with having the "intent to cause injury" generally, and not with the "intent to cause injury" specific to either a person or property.

-8-

> (A) With the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person . . .

The *mens rea* in <u>Myers</u> was focused and devoid of alternatives: "the purpose of terrorizing another person." <u>Id.</u> As such, the alternatives under examination were the different objects of the threats: death, serious physical injury, or substantial property damage. Citing Arkansas cases where charges and jury instructions omitted reference to property damage, we concluded the alternatives were elements rather than means. <u>Id.</u> at 766. In reaching that conclusion, we relied on the instruction from <u>Mathis</u> that, when state courts have clarified the means–element distinction, the federal court's task is simply to apply that case law. <u>See</u> <u>id.</u> (stating that where "state court decision[s] definitively answer[] the question," we "need only follow what [they] say" (quoting <u>Mathis</u>, 136 U.S. at 2256)). Here, because such conclusive guidance is lacking and because the statutes are dissimilar, <u>Myers</u> simply does not apply.

Because resentencing is required and additional questions may arise, we address Harris's other "crime of violence" argument but need not address the overall reasonableness of his initial sentence or his separate argument concerning notice. Regarding Harris's conviction for second degree battery under Arkansas Code Annotated § 5–13–202(a) (2006), we previously determined the statute is overinclusive and divisible in that it criminalizes conduct with *mens rea* alternatives, one of which is mere recklessness and does not satisfy the definition for a crime of violence. <u>See</u> <u>United States v. Rice</u>, 813 F.3d 704, 705–06 (8th Cir. 2016); <u>United States v. Dawn</u>, 685 F.3d 790, 795–96 (8th Cir. 2012), <u>abrogated on other grounds by</u> <u>Lofton v. United States</u>, 920 F.3d 572, 575 (8th Cir. 2019). Applying the modified categorical approach, Harris argues the <u>Shepard</u> materials surrounding his 2006 conviction are inconclusive. We reject his argument because the charging document for that offense indicates he was charged with the "purpose of causing serious injury" and "did . . . purposely cause serious physical injury."

The district court did not err in finding Harris's conviction for second degree battery qualified as a crime of violence.

We reverse the judgment of the district court.

_____