Francisco Godinas BARCENAS *v.*
STATE of Arkansas

CR 00-693                                          33 S.W.3d 136

Supreme Court of Arkansas
Opinion delivered December 14, 2000

*Troy R. Douglas*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Francisco Godinas Barcenas appeals from a judgment of conviction for sexual misconduct, which is a Class A misdemeanor, and from a fine of $1,000. The basis for his appeal is that a language barrier existed which hampered his ability to voluntarily, knowingly, and intelligently give an inculpatory statement to police officers. Thus, he contends that the trial court erred in denying his motion to suppress that statement. We agree with Barcenas that his *Miranda* rights were not knowingly and intelligently waived, and we reverse the judgment and remand.

The facts of this matter occurred in Mena during the late evening hours of June 13, 1998. Earlier the same evening, Barcenas, age 25, and his wife, Arlita, had attended a family pool party with Arlita's cousin, N.W., who was age 14, and others. The group returned to Barcenas's home and played cards and ate pizza. There was conflicting testimony about the extent to which Barcenas had been drinking, although N.W. testified that Barcenas had been drinking beer since about 9:30 p.m.

At about 12:30 a.m., while Arlita was asleep on a roll-a-way bed in the living area, Barcenas and N.W. were playing cards.[1] At that time, Barcenas put his hand up N.W.'s shorts and under her underwear and digitally penetrated her vagina. This occurred, according to N.W., for ten or fifteen minutes. Barcenas's young child, Lorenzo, then awoke and asked Barcenas for popcorn. N.W. went to the kitchen to microwave popcorn, and there Barcenas again, according to N.W., digitally penetrated her. He also reached under her shirt and touched her on top of her bra. When Arlita entered the kitchen, this activity ceased.

On June 26, 1998, N.W. went to the Mena Police Department and complained about what Barcenas had done to her. Mena police officers went to Barcenas's house on June 27, 1998, and asked him to come down to the police station for an interview. According to Sergeant Cecil Knox, Barcenas was initially given his *Miranda* warnings and admitted that he had "touched" N.W. The police officers then decided to videotape Barcenas's statement.

Barcenas does not read or write English and speaks broken English. His native language is Spanish, and he is not an American citizen. No other Spanish-speaking person was available to assist Barcenas during the custodial interrogation. The questioning began with Sergeant Cecil Knox and Sergeant Bill Head in attendance, neither of whom spoke Spanish. The *Miranda* warnings were repeated in English several times and explained in different words, when it was clear that Barcenas had not initially grasped their meaning. During the statement, Barcenas pointed to his crotch and admitted that he had touched N.W. there. The videotaped interview lasted about fifteen to twenty minutes.

On July 1, 1998, Barcenas was charged with first-degree violation of a minor, which is a Class C felony. On February 17, 1999, he pled guilty to violation of a minor in the second degree, a Class D felony, and was sentenced to a suspended sentence of seventy-two months. The next day, on February 18, 1999, the trial court permitted Barcenas to withdraw his plea for good cause shown due to the language barrier. Specifically, the trial court said that

---

[1] Though the record is not clear on this, it appears that technically this occurred during the early morning hours of June 14, 1998.

Barcenas "did not knowingly and intelligently enter a plea of Guilty to the aforesaid charge due to a language barrier."

On February 24, 1999, the trial court held a hearing on Barcenas's motion to suppress the statement made to Mena police officers. The basis for the suppression motion was the language barrier and the fact that the statement was involuntary and not knowingly and intelligently made. On March 11, 1999, the motion was denied, and Barcenas was tried by a jury for first-degree violation of a minor. He was found guilty of the lesser offense of sexual misconduct and sentenced to pay a fine of $1,000.

The issue before us in this appeal is whether the trial court erred in denying Barcenas's motion to suppress which included whether the Mena police officers obtained Barcenas's statement in violation of his *Miranda* rights in that the statement was involuntary and not knowingly and intelligently made.

■■ The standards for examining custodial statements have been made clear by this court. We review a trial court's ruling on a motion to suppress by making an "independent determination based upon the totality of the circumstances, viewing the evidence in a light most favorable to the State." *Wright v. State*, 335 Ark. 395, 403-04, 983 S.W.2d 397, 401 (1998) (citing *Tabor v. State*, 333 Ark. 429, 971 S.W.2d 227 (1998)). The ruling will only be reversed if it is clearly against the preponderance of the evidence. *See id.* An accused's statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that the custodial statement was given voluntarily and was knowingly and intelligently made. *See Smith v. State*, 334 Ark. 190, 974 S.W.2d 427 (1998) (citing *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997)). We make an independent review of the totality of the circumstances surrounding the confession to determine whether the appellant knowingly, voluntarily, and intelligently waived his constitutional rights. *See id.* (citing *Davis v. State*, 330 Ark. 76, 953 S.W.2d 559 (1997)).

■ Initially, the State argues that Barcenas's appeal must fail for procedural reasons. According to the State, Barcenas's abstract reveals no ruling by the trial court on the suppression motion. We disagree. The abstract and record reflect the trial court's docket which contains this entry in connection with the suppression

motion, "Motion to suppress denied." Moreover, the trial court allowed the State to play the videotape of the statement to the jury, after a renewed motion to suppress by defense counsel. We hold that the issue is preserved for our review.

■ On the merits, we follow our standards and make an independent determination based on the totality of the circumstances. Here, after reviewing the videotape, it is clear to this court that Barcenas was not fully aware of his *Miranda* rights when he made his statement. That, of course, is the critical test. As this court said in *Smith v. State, supra*, a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it" as well as whether the accused made the choice uncoerced by the police officers to waive his rights are the essential focal points in determining whether a waiver was knowingly and intelligently made. *Smith*, 334 Ark. at 204, 974 S.W.2d at 434 (citation omitted). Barcenas, however, appeared perplexed in the videotape by the *Miranda* warnings, which had to be repeated and explained in different ways in a language not his own. Furthermore, his answers to the *Miranda* warnings appear at times unintelligible, and there is no transcript of the videotape prepared by the court reporter, apparently because of the difficulty in doing so.[2] We are further influenced by the fact that even though the trial court denied Barcenas's motion to suppress, twenty-one days earlier it granted a motion for withdrawal of a guilty plea due to the language barrier and because the plea had not been knowingly and intelligently made.

■ ■ We, therefore, reverse the trial court's order denying suppression of the videotaped statement. Because unfair prejudice to Barcenas resulted from playing the videotaped statement to the jury, we also reverse the judgment of conviction and remand for further proceedings.

Reversed and remanded.

---

[2] In Barcenas's abstract, he reports that the "Court reporter has certified [the tape] and that she attempted, without success, to transcribe [the] interview."