Eric Z. GRILLOT *v*. STATE of Arkansas

CR 01-792 107 S.W.3d 136

Supreme Court of Arkansas
Opinion delivered May 22, 2003

*Ed Webb & Associates*, by: *Lynn D. Lisk*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Eric Z. Grillot was convicted by a jury of first-degree murder, aggravated robbery, theft of property, and hindering apprehension, and now raises five points on appeal. Grillot first argues that the circuit court erred in refusing to suppress his confessions. He also challenges the sufficiency of the evidence to support his convictions. For his third and fourth points, Grillot claims that the circuit court erred in denying his motion for a new trial based on juror misconduct and erred in refusing to allow defense counsel to argue different burden-of-proof standards in closing argument. In his final point, he contends that the model jury instruction for capital murder contains an incorrect statement of the law and that

it was error for the circuit court to instruct the jury on lesser-included offenses.

On February 14, 1998, Eric Grillot left his home in Alabama with Jeremy Phillips and his roommate Will Jackson. The three were going to drop Phillips off in Arkansas where his family lived. They drove all night in Jackson's truck and were stopped by law enforcement officers once in Dumas for speeding while Grillot was driving. Upon arriving in the Fairfield Bay area about 7:00 a.m. on the morning of the 15th, the three stopped at the home of Grillot's parents in Shirley where they visited for one or two hours. Jackson had never been to Fairfield Bay, so they drove him around showing him the area. During the drive, they stopped at a gas station in Greers Ferry where Phillips purportedly made some phone calls in an attempt to obtain marijuana. Eventually, they went to a remote undeveloped area of Fairfield Bay, known as "the Rocks," and waited for delivery of the marijuana.

All three men were sitting in the truck, Grillot in the driver's seat, Jackson in the front passenger seat, and Phillips in the back seat behind Jackson, when Phillips put a .44 caliber pistol to the back of Jackson's head and shot him, killing him instantly. The evidence is disputed as to whether Grillot was awake at the time of the shooting. Nonetheless, after Jackson was shot, Grillot drove the truck a short distance to some trees and helped Phillips remove the body and drag it into the woods. Phillips wiped some blood off the back of the seat, and then Grillot drove Phillips to his mother's house and dropped him off before heading back to Alabama in Jackson's truck.

When he reached Alabama, Grillot abandoned the truck at a storage facility and walked home. He made a phone call to his parents to let them know he had made it back to Alabama safely and then went to work. Later, he threw the keys to the truck and Jackson's wallet into a nearby canal. The next day, Jackson's father called and asked if Grillot had seen Jackson. Grillot told him that the last time he saw Jackson was just before he went to work after the two of them had returned to Alabama. Grillot also told Jackson's father that Jackson had received a job offer in Florida, so he might have gone there. On February 20, 1998, Jackson's father filed a missing person's report with the Baldwin County Sheriff's Office in Alabama.

Subsequently, after Jackson's abandoned truck was found by Alabama law enforcement officers, Grillot was called in for questioning on March 2, 1998. At that time, he told a deputy with the Baldwin County Sheriff's Office that he had gone with Jackson to drop Phillips off in Arkansas, and had not seen Jackson since they returned to Alabama. A short time later, Grillot moved back to Arkansas to live with his parents.

On March 10, 1998, the Van Buren County Sheriff's Office questioned Grillot and Phillips following receipt of the missing person's report that listed Grillot and Phillips as the last two people seen with Jackson. Grillot told the Van Buren investigators the same story he had previously told to the Sheriff's Office in Baldwin County, Alabama. Then, on March 13, 1998, Jackson's body was found where Grillot and Phillips had left it in the woods. Grillot and Phillips were picked up and transported to the Van Buren County Sheriff's Office for further questioning. It was at this point that Grillot admitted helping Phillips get rid of the body and evidence of the murder. However, he denied knowing anything about Phillips's plan to kill Jackson. He stated that he was asleep in the driver's seat of the truck at the time Jackson was shot. According to Grillot, Phillips had told him that he had been hired to kill Jackson. Moreover, Grillot claimed Phillips agreed to give him $3,000 "for his trouble."

Phillips himself confessed to shooting Jackson. His story, at that time, aligned with Grillot's version. Phillips said that Grillot did not know about the murder-for-hire contract. Phillips subsequently pleaded guilty to first-degree murder and was sentenced to life imprisonment.

Initially, Grillot was charged with hindering apprehension, aggravated robbery, and theft of property. However, Phillips changed his story and told the police that Grillot knew about the murder-for-hire contract and helped with its planning and commission. According to Phillips, they had agreed for him to take the fall, but because Grillot began saying bad things about him, he decided to tell the truth. As a result, the information filed against Grillot was amended to include a count of capital-felony murder.

Grillot's case went to trial on August 23, 2000. On August 24, 2000, following voir dire and jury selection, one juror disclosed to the court that he had come into contact with Grillot's

sister after she overheard him talk with his wife about the case. The court proceeded to conduct an *in camera* hearing, and the State moved to have the juror removed for cause. Grillot objected to the State's motion, and the circuit court ruled against the State.

At the conclusion of the three-day trial, Grillot was convicted of first-degree murder, aggravated robbery, theft of property, and hindering apprehension. He was sentenced to a total of twenty years' imprisonment. Grillot appealed his convictions to the Arkansas Court of Appeals, which then certified the case to this court. We accepted certification and now affirm the convictions.

### I. Sufficiency of the Evidence

Preservation of Grillot's right against double jeopardy requires that we consider his challenge to the sufficiency of the evidence before we consider alleged trial error even though the issue was not presented as the first issue on appeal. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002). In order to contest the sufficiency of the evidence to support a conviction on appeal, the defendant must move for a directed verdict at the close of the prosecution and again at the close of all the evidence. Ark. R. Crim. P. 33.1(a) (2002); *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003). Moreover, we have made it clear that a defendant, in making his motions for directed verdict, must anticipate an instruction on lesser-included offenses and specifically address the elements of that lesser-included offense on which he wishes to challenge the State's proof in his motion. *Brown v. State*, 347 Ark. 308, 65 S.W.3d 394 (2001).

At the close of the State's case-in-chief, Grillot made the following argument:

> [D]efense moves for a directed verdict as to Count 1, Capital Murder. On that basis, Judge, the evidence is clear that there is no underlying felony that has been proven in this case. . . . Jeremy Phillips [testified] he did it for premeditation, that he basically did it for hire. . . . [T]he State would have to show that Eric Grillot is an accomplice. There is no testimony whatsoever that shows Eric Grillot is an accomplice to Jeremy Phillips in that - - - - when he committed those murders. The statements and testimony is that basically Jeremy Phillips did this on his own, that anything Eric Grillot did was basically to cover up the murder,

not to aid, abet or assist in the murder which was under the accomplice theory. So, we would ask for a directed verdict on the capital murder charge.

Then, at the conclusion of all the evidence, Grillot moved for a directed verdict stating:

[A]s to count 1, capital murder[,] . . . [t]he evidence is clear that Jeremy Phillips was the person who pulled the trigger and the person who shot Will Jackson. That fact is uncontroverted. The only way that Mr. Grillot can be guilty of capital murder would be if he is found to be an accomplice; that he aided and abetted in the planning and the only evidence that indicates that that may have been true is Jeremy Phillips' statement. . . . Which is uncorroborated. The law is that his statement has to be corroborated with some evidence, independent evidence, to indicate the charges will be true. As the court said . . . at the end of the State's case[,] the only evidence the Court could find would be circumstantial evidence but felt circumstantial evidence was sufficient to go to the jury. Circumstantial evidence is not sufficient uncorroborated to make a finding that Eric Grillot was an accomplice. . . . [M]y understanding is that the State is amending the charge to add murder for hire. Well, the testimony is that the murder for hire was - - - was an act with Jeremy Phillips the shooter, testified that he was hired to do that. His testimony was that Eric did not plan. Again, that is accomplice testimony. It is uncorroborated. The only evidence we have of that is what Jeremy Phillips says. So as to the capital murder charge I move for a directed verdict on that charge.

As a threshold matter, the State contends that the motion for directed verdict quoted above is insufficient to preserve a sufficiency challenge to his first-degree murder conviction because the directed-verdict motion addressed only the capital murder charge and not the lesser-included offenses. We agree.

■ This court has held that, in order to preserve challenges to the sufficiency of the evidence supporting convictions for lesser-included offenses, defendants must address the lesser-included offenses either by name or by apprising the trial court of the elements of the lesser-included offenses questioned by their motions for directed verdict. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001) (concluding that challenge to the sufficiency of the evidence to support a first-degree murder conviction was procedurally barred when the defendant was charged with capital

murder and failed to move specifically for directed verdict on the lesser-included offense of first-degree murder); *see also Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001).

In the instant case, Grillot failed to move for a directed verdict on the lesser-included offense of first-degree murder. Not only did he fail to address the lesser-included offense of first-degree murder by name; but, he also failed to address the elements of the lesser-included offense as distinguished from the elements of the capital-murder charge. Contrary to the dissent's assertion that "there was no distinction between capital murder and first-degree murder for this court to consider," the elements that the State had to prove in order to obtain a conviction on either offense were different. The instructions given to the jury demonstrate that the elements at issue in this case were not identical. The capital-murder instruction and the first-degree-murder instruction given at trial read, in relevant part, as follows:

> Eric Grillot is charged [as an] accomplice in the offense of capital murder. To sustain . . . this charge, the State must prove the following things beyond a reasonable doubt. First, that Eric Grillot or an accomplice entered into an agreement that they would cause the death of another person in return for anything of value. And second, that pursuant to that agreement, they caused the death of William Jackson. Or . . . that with premeditated and deliberated purpose of causing the death of any person, Eric Grillot or an accomplice caused the death of William Jackson.

> \* \* \* \*

> If you have a reasonable doubt of the defendant's guilt of capital murder, then you will consider the charge of first degree murder. To sustain this charge, the State must prove the following things beyond a reasonable doubt. That with the purpose of causing the death of William Jackson, Eric Grillot or an accomplice caused the death of William Jackson.

Thus, in making his directed-verdict motion, Grillot was required to set forth the differing elements.[1] *See Jenkins v. State*, 350 Ark.

---

[1] Under the dissent's analysis on this point, the issue of sufficiency of the evidence to support a conviction of any lesser-included offense would be preserved by a directed-verdict motion that addresses nothing more than an element common to both the crime charged and the lesser-included offenses.

219, 85 S.W.3d 878 (2002); *Brown v. State, supra; Walker v. State,* 318 Ark. 107, 883 S.W.2d 831 (1994).[2]

---

[2] It should be noted that the prosecutor made the following disclosure before the trial started:

| | |
|---|---|
| DEFENSE COUNSEL: | [The bill of particulars] says the State intends to rely on the felony murder rule. Are you saying in addition that you are relying on the capital murder statute that there was a felony committed in the furtherance of the felony that Will Jackson was killed? |
| PROSECUTOR: | It is our position that it was a murder for hire and separate and apart from that or rather in addition to that, but not dependent upon that, it is — it was premeditated and deliberate . . . . There is a number of sub-sections under that capital murder statute. |
| DEFENSE COUNSEL: | I understand that. One of them is murder for hire. |
| PROSECUTOR: | One of them is capital felony murder, one of them would be murder for hire and the other might be premeditated and deliberated. All three of those may be able to be proved in this case. We've charged it as capital felony murder with aggravated robbery being the underlying offense. |
| DEFENSE COUNSEL: | That's what you've charged. |
| PROSECUTOR: | To the extent that the proof changes, then there may be some basis for reliance on one of those different sub-sections. But at this point the State is proceeding on the felony murder. |

Before Grillot moved for a directed verdict at the close of the State's case-in-chief, the prosecutor moved to amend the pleadings to conform to the proof and reiterated his earlier statement regarding the scope of the capital murder charge:

| | |
|---|---|
| PROSECUTOR: | I just want to before we rest to reflect, I just want to make mention, that what we did yesterday morning when Ralph was asking sort of bill of particular-type questions? About what section we were going under? And we told him premeditated and deliberate and murder for hire. . . . I just want to move to amend the pleadings to conform for what we told him yesterday before the jury was empaneled . . . . |
| THE COURT: | I grant the motion. |
| PROSECUTOR: | Thank you. |

■ Nonetheless, Grillot asserts that because he denied any and all liability for capital murder, he did not believe a lesser-included instruction would be warranted. On that basis, he contends there was no need to address the lesser-included offenses in his directed-verdict motions. This argument is without merit for the reasons stated later in this opinion when we address Grillot's asserted point of error regarding jury instructions. As noted by this court in *Brown v. State, supra*, a defendant, in making his motion for directed verdict, must anticipate an instruction on lesser-included offenses. 347 Ark. 308, 65 S.W.3d 394.

■ ■ In any event, the rules of criminal procedure and our case law are clear. As already stated, in order to preserve an argument based on the sufficiency of the evidence, a defendant must move for a directed verdict with specificity at the close of the State's case-in-chief and again at the close of all the evidence. Ark. R. Crim. P. 33.1(a); *Haynes v. State, supra*. Additionally, we have consistently held that first-degree murder is a lesser-included offense to premeditated capital murder. *McFarland v. State*, 337 Ark. 386, 989 S.W.2d 899 (1999); *Allen v. State*, 310 Ark. 384, 838 S.W.2d 346 (1992); *Bell v. State*, 296 Ark. 458, 757 S.W.2d 937 (1986). A mere belief that a jury instruction on a lesser-included offense should not be submitted does not obviate the defendant's duty to move for a directed verdict with specificity.

Grillot also challenges the sufficiency of the evidence supporting his convictions for aggravated robbery and theft of prop-

---

| DEFENSE COUNSEL: | As I understand the motion, now Judge, before the Court, and the ruling is the State has amended their felony information of capital murder to say it is murder for hire. |
|---|---|
| PROSECUTOR: | No, you ask us yesterday morning about what sub-section we were going under? Under capital murder? And we told you premeditated and deliberate purpose to kill someone and murder for hire. That's all. So the only amendment is to the capital murder charge. |

Based on the above-quoted colloquies between the prosecutor and defense counsel, it is clear that the State amended its capital-felony murder charge before the close of its case-in-chief and before Grillot moved for a directed verdict. As amended, the State's capital murder charge included capital-felony murder, premeditated capital murder, and murder-for-hire. *See* Ark. Code Ann. §§ 5-10-101(a)(1), (4), (7) (Repl. 1997).

erty, contending that there was no evidence he intended to deprive the owner of any property. A person commits aggravated robbery if he commits robbery and he is armed with a deadly weapon or represents by word or conduct that he is so armed, or he inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-12-103 (Repl. 1997). A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another. Ark. Code Ann. § 5-12-102 (Repl. 1997). A person commits theft of property if he "[k]nowingly takes or exercises unlawful control over the property of another person with purpose of depriving the owner thereof." Ark. Code Ann. § 5-36-103(a)(1) (Repl. 1997). Deprivation of property requires the disposal "under circumstances that make its restoration unlikely." Ark. Code Ann. § 5-36-101(4)(C) (Repl. 1997).

In this case, Phillips took money from Jackson after killing him. In addition, Grillot took Jackson's truck and abandoned it in another state. Then, he threw the keys to the truck and Jackson's wallet in the Gulf of Mexico. All these acts stemmed from an event where a deadly weapon was used. From these facts, a jury could reasonably infer that neither the truck nor the wallet were likely to be restored to Jackson, or his estate. Accordingly, we conclude there was sufficient evidence to support the aggravated robbery and theft-of-property convictions.

## II. Motion to Suppress

In his first point on appeal, Grillot sets forth several arguments relating to the voluntariness of his confession. First, he argues that the waiver of his Fifth Amendment rights was not voluntary because he was under the influence of drugs. Next, Grillot maintains he was illegally arrested, and, thus, his confession should have been suppressed as fruit of the poisonous tree. Lastly, he contends that when the nature and tenor of an interview change, a suspect who has already been *Mirandized*, must be re-*Mirandized*. Based on these arguments, Grillot maintains that the circuit court erred in denying his motion to suppress his confession.

For authority, Grillot relies solely on the decisions of the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1996), and *Dickerson v. United States*, 530 U.S. 428 (2000). The Supreme Court has held that, on appeal, the voluntariness of custodial statements is tested by viewing the totality of the circumstances. *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct 1420, 22 L.Ed.2d 684 (1969); *see also Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Likewise, in reviewing a trial court's refusal to suppress a confession, we make an independent determination based upon the totality of the circumstances. *See Cox v. State*, 345 Ark. 391, 47 S.W.3d 244 (2001); *Riggs v. State*, 339 Ark. 111, 3 S.W.3d 305 (1999). The ruling will only be reversed if it is clearly against the preponderance of the evidence. *Giles v. State*, 261 Ark. 413, 549 S.W.2d 479 (1977). Any conflict in the testimony of different witnesses is for the trial court to resolve. *Cox v. State, supra.*

This court has also applied two other standards of review in cases involving the suppression of custodial statements. We have recently stated:

> In reviewing a trial judge's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances, viewing the evidence *in a light most favorable to the State [appellee]*, and we reverse only if the ruling is clearly against the preponderance of the evidence.

*Jenkins v. State*, 348 Ark. 686, 701-02, 75 S.W.3d 180, 190 (2002) (emphasis added); *Howell v. State*, 350 Ark. 552, 89 S.W.3d 343 (2002); *Fairchild v. State*, 349 Ark. 147, 76 S.W.3d 884 (2002); *Jones v. State*, 348 Ark. 619, 74 S.W.3d 663 (2002); *Bunch v. State*, 346 Ark. 33, 57 S.W.3d 124 (2001); *Lacy v. State*, 345 Ark. 63, 44 S.W.3d 296 (2001); *Hill v. State*, 344 Ark. 216, 40 S.W.3d 751 (2001); *Barcenas v. State*, 343 Ark. 181, 33 S.W.3d 136 (2000); *Smith v. State*, 334 Ark. 190, 974 S.W.2d 427 (1998); *Wright v. State*, 335 Ark. 395, 983 S.W.2d 397 (1998); *Tabor v. State*, 333 Ark. 429, 971 S.W.2d 227 (1998); *Noble v. State*, 319 Ark. 407, 892 S.W.2d 477 (1995); *Johnson v. State*, 307 Ark. 525, 823 S.W.2d 440 (1992); *Moore v. State*, 303 Ark. 514, 798 S.W.2d 87 (1990). The "light most favorable to the State" language repeated throughout this entire line of cases can be traced to *Moore v. State*, which applied, albeit erroneously, the standard of review for

search–and–seizure cases[3] to the voluntariness of a confession. *Moore v. State*, 303 Ark. 514, 798 S.W.2d 87 (1990) (citing *Russell v. State*, 295 Ark. 619, 751 S.W.2d 334 (1988)); *see also Tabor v. State*, 333 Ark. 429, 971 S.W.2d 227 (1998)(citing *Norman v. State*, 326 Ark. 210, 931 S.W.2d 96 (1996)).

Another line of cases sets out a slightly different standard for the review of a trial court's denial of a defendant's motion to suppress a confession:

> We make an independent determination based upon the totality of the circumstances, with all doubts resolved in favor of individual rights and safeguards.

*Bisbee v. State*, 341 Ark. 508, 17 S.W.3d 477 (2000); *Davis v. State*, 275 Ark. 264, 630 S.W.2d 1 (1982) (*Davis I*); *Giles v. State*, 261 Ark. 413, 549 S.W.2d 479 (1977); *Sutton v. State*, 262 Ark. 492, 559 S.W.2d 16 (1977); *Watson v. State*, 255 Ark. 631, 501 S.W.2d 479 (1973); *Smith v. State*, 240 Ark. 726, 729, 401 S.W.2d 749, 751 (1966).

 We now take this opportunity to clarify the appropriate standard of review for cases involving a trial court's ruling on the voluntariness of a confession: We make an independent determination based upon the totality of the circumstances. *Cox v. State, supra*. This language is in keeping with the standard of review enunciated by the Supreme Court in *Frazier v. Cupp, supra*. In so holding, we overrule any prior decisions to the extent they are inconsistent with this opinion.[4]

 A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was

---

[3] We have recently clarified our standard of review for determination of reasonable suspicion or probable cause as they relate to warrantless searches alleged to be in violation of the Fourth Amendment to the United States Constitution. *See Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003)(citing *Ornealas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

[4] We have determined that our application of "the light most favorable to the State" standard of review in *Moore v. State, supra*, and it progeny did not result in any error. Moreover, because the standard of review requiring all doubts to be resolved in favor of individual rights and safeguards is more stringent, a defendant could not have suffered any prejudice.

given voluntarily and was knowingly and intelligently made. *Jones v. State*, 344 Ark. 682, 42 S.W.3d 536 (2001). In order to determine whether a waiver of *Miranda* rights is voluntary, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.*

Here, it is undisputed that Grillot was in custody at the time he confessed. Moreover, it is undisputed that he signed a form that reflects an acknowledgment and waiver of his *Miranda* rights, and his agreement to give a statement and answer questions. The statement was taped and later transcribed. Approximately two and one-half hours elapsed from the time he signed the waiver until the time he finished giving his statement.

### A. Intoxication

Grillot asserts it is reasonable to infer that he was under the influence of marijuana at the time he signed the "Rights Form" waiving his *Miranda* rights. According to the transcript of his statement, the following colloquy took place near the end of the interview:

OFFICER 1: Are you high right now or you straight?

GRILLOT: Sober as hell.

OFFICER 2: You haven't smoked or drank anything today?

GRILLOT: Yes, I have today right before I come in here.

OFFICER 2: What time? But you are not high now?

GRILLOT: No man, no, I wasn't high thirty or forty-five minutes ago.

OFFICER 3: Well, let's just do it this way, do you feel like you are impaired?

GRILLOT: No, no.

██ ██ When an appellant claims that his confession was rendered involuntary because of drug or alcohol consumption, the level of his comprehension is a factual matter to be resolved by the trial court. *Jones v. State*, 344 Ark. 682, 42 S.W.3d 536 (2001). In testing the voluntariness of one who claims intoxication at the time of waiving his rights and making a statement, this court determines whether the individual was of sufficient mental capacity to know what he was saying — capable of realizing the mean-

ing of his statement — and that he was not suffering from any hallucinations or delusions. *Id.*

In the instant case, Grillot makes no claim that he did not have sufficient mental capacity, or that he was unable to understand the meaning of his statement. Moreover, there is no evidence that he was suffering from any hallucinations or delusions. In fact, during the first part of the interview, Grillot detailed the same story he had previously told Jackson's father and law enforcement officers in both Alabama and Arkansas. Additionally, he cogently fielded questions asked by the investigating officers. The fact that Grillot was able to relate such a detailed account indicates that he was not suffering from any mental disabilities. *See, e.g., Jones v. State,* 344 Ark. at 689, 42 S.W.3d at 541 ("[I]t is significant in making a finding of voluntariness that the accused answered questions without indications of physical or mental disabilities."); *see also Riggs v. State,* 339 Ark. 111, 3 S.W.3d 305 (1999) ("Rational response to questioning is a legitimate factor for the trial court to consider.").

 The record here does not indicate that Grillot was under the influence of drugs such that he did not realize the meaning of his statement. Prior to his confession, Grillot had been interviewed twice by police officers, and he waived his *Miranda* rights on both occasions. Additionally, the transcript of Grillot's confession reveals that he was completely lucid. Based on our review of the evidence, we cannot say that the circuit court's ruling is clearly against the preponderance of the evidence.

## B. Illegal Arrest

Grillot also alleges that because he was lured to the station on the pretext of just answering a few follow-up questions, his arrest was pretextual, and therefore illegal, and the statement should be suppressed as fruit of the poisonous tree. For authority, he cites *State v. Shepherd,* 303 Ark. 447, 798 S.W.2d 45 (1990). In *Shepherd,* police used an illegal subpoena to gain entrance into a defendant's house where they then seized evidence in "plain view." *Id.* The trial court ruled that the prosecutor abused its subpoena power because the real objective was to gather evidence. *Id.* The evidence was suppressed and we affirmed. *Id.*

■ The *Shepherd* case is inapposite. Here, the sheriff's deputies did nothing illegal when they asked Grillot to answer some follow-up questions concerning Jackson's death. In fact, Grillot concedes that he went voluntarily to the sheriff's office to answer questions about the death of William Jackson. Upon being subjected to custodial interrogation, he was entitled to the *Miranda* warnings. *See Miranda v. Arizona, supra.* As noted earlier, Grillot was informed of his *Miranda* rights and waived them.

## C. *Re*-Mirandization

Grillot's principal argument concerning the voluntariness of his confession deals with the concept of "re-*Mirandizing.*" When Jackson was first reported missing, Grillot told the police a rendition of events that placed Jackson in Alabama. The sheriff's deputies later found Jackson's body in the Fairfield Bay area, which indicated that Jackson had never returned to Alabama and, therefore, Grillot was lying. Officers transported Grillot to the sheriff's office to answer questions about Jackson's death. Grillot started out telling officers the same story he had told earlier. Then, the interviewing officers told Grillot they knew he was lying because they had found the victim's body.

■ According to Grillot, at the moment this change in the interview's focus and nature occurred, that is, when the officers asked him "do you want to start again," they should have re-*Mirandized* him. Moreover, he asserts the *Miranda* warnings provide a "bright line" test for officers. *Dickerson v. United States,* 530 U.S. 428 (2000). This court applied the *Miranda* ruling soon after it was announced by the United States Supreme Court, and early on, we held that a suspect need not be re-*Mirandized* during continuous interrogation. *See, e.g., Sossamon v. State,* 245 Ark. 306, 432 S.W.2d 469 (1968) (*Miranda* warnings need not be repeated after an overnight stay at the police station). Moreover, our court has also held that *Miranda* warnings must only be repeated when the circumstances have changed so seriously that the accused's answers are no longer voluntary, or the accused is no longer making a knowing and intelligent relinquishment or abandonment of his rights. *Jones v. State, supra.*

Recently, we addressed an analogous situation with strikingly similar facts. *See Upton v. State,* 343 Ark. 543, 36 S.W.3d 740

(2001). In *Upton*, the defendant was asked to come to the police station and give a statement. *Id.* He was *Mirandized* and during questioning gave two statements. *Id.* At first, following the *Miranda* warnings, the defendant disavowed any knowledge of or complicity in the murder. *Id.* Later, after he was told that his friend had placed him at the crime scene, he confessed to the murder. *Id.* That interview process lasted approximately two hours. *Id.*

 In the *Upton* case, this court concluded that the defendant's status changed from that of a voluntary witness to that of a suspect. *Id.* Nonetheless, we held that the initial *Miranda* warnings were sufficient and there was no Fifth Amendment violation. *Id.* In so holding, this court first noted that a statement made voluntarily after a two-day hiatus from the *Miranda* warnings was constitutional. *Id.* We also relied upon a decision by the Supreme Court of Connecticut involving similar facts and quoted the following language with approval:

> The disclosure that *Miranda* requires must be made no later than the time when an accused is taken into custody. When the police are conducting a good faith precustodial investigation at police headquarters, they may have difficulty in determining the precise moment when questioning turns into custodial interrogation and *Miranda* warnings are required. Although the uncertain line between questioning and custodial interrogation does not excuse late warnings, it does provide justification for the validity of good faith early warnings which are sufficiently proximate to formal custody to alert the person being questioned to the importance of these constitutional rights.

*Id.* (quoting *State v. Burge*, 195 Conn. 232, 247-49, 487 A.2d 532, 543 (1985)). It therefore follows that in the instant case, where the interview lasted approximately two and one-half hours and took place without a break in time, the initial *Miranda* warnings were sufficient.

### D. False Promise

In a related argument Grillot appears to contend that his confession was induced by the officer's statements. Specifically, he states, "[t]he police clearly intended the Appellant to rely upon their false statement about his *Miranda* rights and go forward in

confessing his involvement in the murder." He then suggests "the clear spirit and import of *Miranda* and *Dickerson* is that they may *not* lie about the meaning of a suspect's *Miranda* rights." Grillot's argument stems from the following colloquy that took place during the interview:

GRILLOT: He said he got paid for it.

OFFICER: Got paid for it?

GRILLOT: Yeah. Said somebody wanted him dead.

OFFICER: Did he say who or why?

GRILLOT: I don't know. Somebody wanted Will dead and he was gettin' paid for it.

OFFICER: Do you believe him?

GRILLOT: I don't know, I don't believe him. I think he's, I don't know. I —

OFFICER: I'm just asking your opinion as far as why do you think [Phillips] did it?

GRILLOT: [Phillips is] not here listening to every f***in' word I say, is he?

OFFICER: No Sir.

GRILLOT: Is this going to be played in court?

OFFICER: No, the tape won't. They might ask you to testify. But we're just talking right now. . . .[5]

Grillot maintains the above statement effectually abrogated the earlier *Miranda* warnings because the officers lied about the effect of the *Miranda* waiver. More particularly, he contends his confession was involuntary because the *Miranda* warnings advise an accused that a confession can be used in court, while the officer told him the tape would not be played in court.

 For a statement to be involuntary, the confession must have been induced or influenced by the police officer's statements. *Bisbee v. State*, 341 Ark. 508, 17 S.W.3d 477 (2000). Before the sheriff's deputy made the referenced statement about whether or not the tape would be played in court, Grillot had already confessed. Thus, his confession could not have been pro-

---

[5] The transcript of the statement is 115 pages long, and the above-quoted colloquy appears at page 79.

cured by the statement. Additionally, taken in context, it appears Grillot was only concerned about the possibility of Phillips hearing his confession. Accordingly, for the reasons stated above, we cannot say that the circuit court's denial of Grillot's motion to suppress his custodial statements was clearly against the preponderance of the evidence.

### III. Juror Misconduct

Grillot's third argument is that the circuit court erred in denying his motion for a new trial based upon juror misconduct. Upon being selected as a juror, John Patterson called his wife and discussed the case with her. Grillot's sister overheard the telephone conversation and talked with Patterson about the case. This information was brought to the court's attention, whereupon the court held an *in camera* hearing to investigate the matter. The State asked that Mr. Patterson be removed from the jury. Grillot objected, arguing that the contact was minimal and he would "take [Mr. Patterson] at face value."

■■ This point is without merit. We have held that a party cannot complain on appeal about relief to which he agreed or sought. *Goff v. State*, 341 Ark. 567, 19 S.W.3d 579 (2000). Grillot cannot argue below against the removal of a juror for cause, and then complain on appeal that he was prejudiced by that same juror being on the panel. In any event, without further inquiry or investigation, Grillot accepted the juror's testimony during the *in camera* hearing.

### IV. Closing Arguments

■ For his fourth point, Grillot claims the circuit court erred in refusing to allow defense counsel to explain the various burden-of-proof standards during closing argument. Without citation to authority, he asserts that a criminal defendant has a right to compare and contrast the various standards of proof to ensure a jury's understanding. We have stated on numerous occasions that we will not consider arguments that are not supported by citation to authority or convincing argument, and it is not apparent without further research that the argument is well taken. *See Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002); *Wooten v. State*, 351 Ark. 241, 91 S.W.3d 63 (2002).

■ Furthermore, Grillot's argument is not persuasive. The trial court is given broad discretion to control counsel in closing arguments, and we will not interfere with that discretion absent a manifest abuse of discretion. *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003); *Leaks v. State*, 339 Ark. 348, 5 S.W.3d 448 (1999). It is the trial court's duty to maintain control of the trial and to prohibit counsel from making improper arguments. *Smith v. State, supra.*

■ At issue is the prosecutor's objection to defense counsel's use of a chart illustrating and comparing the various burden-of-proof standards used in the law. The circuit court allowed Grillot to use the chart but ruled that "he may not refer to any burden of proof other than 'beyond a reasonable doubt' that is the standard in this case." In making that ruling, we conclude that the circuit court properly guarded against the jury becoming confused by other burden-of-proof standards that are inapplicable in criminal cases. Indeed, the circuit court explained the proper burden of proof to the jury. Therefore, we conclude no manifest abuse of discretion has been demonstrated.

## V. Jury Instructions

In his final point on appeal, Grillot makes a two-prong attack on the instructions given to the jury. He contends that the model jury instruction for capital murder contains an incorrect statement of the law, and that it was error for the circuit court to instruct the jury on lesser-included offenses. This point is also without merit.

### Capital-Murder Jury Instruction

■ Grillot argues that the model jury instruction for capital murder (AMI Crim. 2d 1001) erroneously states the law. Yet, Grillot was acquitted of capital murder when the jury found him guilty of first-degree murder as a lesser-included offense. This court has repeatedly held that it will not reverse and remand for a new trial in the absence of prejudice. *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994). Indeed, a verdict renders an instructional error harmless when the jury finds against appellees on the issue involved in the instruction. *Cates v. Brown,* 278 Ark. 242, 645 S.W.2d 658 (1983). An erroneous instruction is harmless when the jury rejects the theory of the instruction. *Sasser v. State*, 338 Ark.

375, 993 S.W.2d 901 (1999) (citing *Hall v. State*, 326 Ark. 318, 93 S.W.2d 363 (1996)). Here, the jury rejected the charge of capital murder. Thus, any error resulting from that instruction is harmless.

*Jury Instructions on Lesser-Included Offenses*

Grillot denied any and all liability for capital murder. As such, he argues that the jury should not have been instructed on the lesser-included offense of first-degree murder. Grillot draws on a body of case law stating that it is erroneous to instruct a jury on a lesser-included offense when it is inconsistent with the defendant's denial of any and all liability for an offense.

An instruction on a lesser-included offense is appropriate when it is supported by even the slightest evidence. *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001). An instruction should only be excluded when there is no rational basis for giving it. *Id.* A trial court's ruling on whether to submit a jury instruction will not be reversed absent an abuse of discretion. *Hill v. State*, 344 Ark. 216, 40 S.W.3d 751 (2001).

In support of this point for reversal, Grillot relies upon our decision in *Doby v. State*, 290 Ark. 408, 720 S.W.2d 694 (1986). In that case, the defendant was charged with possession of a controlled substance with intent to deliver, and he denied ever possessing any drugs. *Id.* Officers testified that, after he was arrested, the defendant confessed to having drugs. Thus, the defendant rested his entire defense on his credibility against that of the officers, such that, as a practical matter, it came down to whom the jury should believe — the officers or the defendant. *Id.* We affirmed the trial court's refusal to give an instruction on a lesser-included offense stating, "[the officers's] testimony so sharply conflicted with Doby's that it would not be reasonable to expect a jury to pick and choose and come up with a finding of a lesser offense when to do so would require a finding that Doby was a liar and the officers liars in part." *Id.* The *Doby* court explained that where the defendant denies any act occurred, there may be no rational basis for an instruction on a lesser-included offense. *See Flurry v. State*, 290 Ark. 417, 720 S.W.2d 699 (1986).

Grillot's reliance on our decision in *Doby* is misplaced. Here, the testimony did not conflict in a manner that would

require the jury to conclude Grillot was either guilty of capital murder or nothing at all. He did not deny the act of murder occurred; rather, he denied that he had the requisite mental state. In contrast, the jury in *Doby* was asked to decide whether or not a specific act occurred — possession of drugs. Here, the act of murder was conceded, and the jury was required to decide whether Grillot acted purposely.

Also, Grillot was charged under a theory of accomplice liability. Under Arkansas law, a person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

> (1) Solicits, advises, encourages, or coerces the other person to commit it; or
> (2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it.

Ark. Code Ann. § 5-2-403 (Repl. 1997). A person commits murder in the first degree if with a purpose of causing the death of another person, he causes the death of another person. Ark. Code Ann. § 5-10-101 (Repl. 1997). A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result. Ark. Code Ann. § 5-2-202(1) (Repl. 1997).

As stated earlier, a charge of capital murder includes the lesser-included offense of first-degree murder. *See McFarland v. State, supra.* Thus, the question presented in this case is whether there was a rational basis to support an instruction on first-degree murder based upon accomplice liability. More specifically, there need only be some evidence presented at trial that could support a finding by the jury that Grillot purposely promoted or facilitated the first-degree murder.[6]

---

[6] The dissent notes that the issue of whether the State is entitled to an instruction on a lesser-included offense pursuant to Ark. Code Ann. § 5-1-110 (Repl. 1997) has been left unresolved, and urges this court to resolve the issue here. *See State v. Jones,* 321 Ark. 451, 903 S.W.2d 170 (1995); *State v. McCormack,* 343 Ark. 285, 34 S.W.3d 735 (2000). However, Grillot's point on appeal is that there was no rational basis to support the instruction; he has not argued the application of Ark. Code Ann. § 5-1-110 to the State's request for an instruction on a lesser-included offense. That issue was not argued to the trial court and has not been briefed by the parties. Accordingly, the issue is not before the court and we will not address it.

We recently addressed the scope of accomplice liability in *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). In that case, we said that a criminal defendant is an accomplice where the defendant renders the requisite aid or encouragement to the principal with regard to the offense at issue, irrespective of the fact that the defendant did not directly commit the murder. *Id.* Furthermore, a defendant may be liable as an accomplice if he assisted and actively participated in the crime. *Id.* Moreover, when two persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Id.* A participant cannot disclaim responsibility because he did not personally take part in every act that went to make up the crime as a whole. *Id.*

According to the undisputed evidence in this case, there was an initial plan between Grillot and Phillips, who had known each other since childhood, to set up a drug transaction in Fairfield Bay and then rob the dealer. Grillot drove Jackson's truck from Alabama to Arkansas. More importantly, he admitted to driving the truck to the remote location where the murder took place. It is not disputed that Phillips shot and killed Jackson, and then Grillot helped dispose of the victim's body and property. Additionally, some testimony indicates that Grillot was in on a scheme to murder Jackson for a fee because he expected to be paid "for his trouble." Moreover, when law enforcement officers first began investigating Jackson's disappearance, Grillot lied about the victim's whereabouts. Finally, he fled the scene of the crime. We have often stated that evidence of flight to avoid arrest may be considered by the jury as corroborative of guilt. *Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002); *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422 (2000); *Cooper v. State*, 317 Ark. 485, 879 S.W.2d 405 (1994).

In reviewing the propriety of giving a jury instruction, the issue is not one of sufficiency, but rather, the issue is whether the slightest evidence supports the instruction. *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001). There is ample evidence to show that Grillot acted with purpose as an accomplice in promoting or facilitating the commission of the first-degree murder. Accordingly, we conclude that there was some evidence before the jury to rationally support the giving of an instruction on the lesser-included offense of first-degree murder.

Affirmed.

THORNTON and HANNAH, JJ., concur in part and dissent in part.

CORBIN, J., not participating.

JIM HANNAH, Justice, concurring in part and dissenting in part. I must respectfully dissent. I disagree with the holding that the failure to move for a directed verdict on first-degree murder precludes consideration of the issue of sufficiency of the evidence in this case. Grillot did not move for a directed verdict on premeditation and deliberation under capital murder; rather, he moved for a directed verdict on a lack of substantial evidence of accomplice liability. The elements of accomplice liability do not differ between capital murder and first-degree murder. Therefore, the trial court had all the issues before it in the directed-verdict motion, and the issue of sufficiency of the evidence is properly before this court.

Further, I do not agree that a criminal defendant is required to anticipate what charges the State may seek to submit to the jury. A criminal defendant cannot reasonably be expected to move for a directed verdict until he or she is made aware of the charges to be submitted to the jury. Additionally, we need not discuss Grillot's argument that the model jury instruction on capital murder erroneously states the law because the issue is moot. Also, I disagree that this court has previously addressed the issue of the nature and extent of the State's right to request and receive jury instructions.

### Directed Verdict

The majority refuses to hear Grillot's appeal from the denial of his directed-verdict motion because although Grillot presented all necessary facts to the trial court for decision on the directed-verdict motion, he failed to include the specific words "first degree murder." Admittedly, Grillot moved for a directed verdict "as to Count 1, Capital Murder" and was convicted of the lesser-included offense of first-degree murder. However, it is obvious from the motion that Grillot was asserting that there was no evidence of his liability as an accomplice. If he was not an accomplice to capital murder he could

not be an accomplice to first-degree murder. This court tradition-ally has not required "magic words." *See Mayfield v. State*, 293 Ark. 216, 736 S.W.2d 12 (1987). It appears that is no longer the case. To refuse to hear the sufficiency-of-the-evidence issue in this case is to exalt form over substance.

Contrary to the majority opinion, the rule that a criminal defendant must move for a directed verdict not only on the charged crime but also on lesser-included offenses is simply not applicable in this case.[1] Grillot's motion for a directed verdict properly raised the issue of sufficiency of the evidence of accom-plice liability in the trial court, and the issue of sufficiency of the evidence of accomplice liability is now properly before this court. Grillot's liability in this case was based on accomplice liability. There was never an issue of who actually committed the murder. Phillips confessed to the murder.

Grillot argued in his directed-verdict motion that there was insufficient evidence of accomplice liability to submit the issue of his liability as an accomplice to the jury. The trial court denied the motion, and Grillot now properly asks this court to determine whether the trial court erred in denying the motion.

The record is clear that Grillot's directed-verdict motion was based on a lack of evidence to prove accomplice liability. There is no distinction between the requirements for liability as an accom-plice to first-degree murder as opposed to capital murder. All the elements the trial court needed to be aware of were raised by the motion. The motion is sufficient where either the offenses or the required elements are contained in the motion. *Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001).

The rule that the directed-verdict motion must also address lesser-included offenses is based on a requirement that the trial court be apprised of alleged deficiencies in the case so that the

---

[1] The majority misses the point of this dissent in stating that I assert there is no distinction between capital murder and first-degree murder in this case. That only partially characterizes my dissent. The majority fails to recognize that the elements of accomplice liability are the same whether the charge is capital murder or first-degree murder, and therefore, the trial court in deciding the issue of accomplice liability as to one charge necessarily decided the issue as to the other. Thus, the court is requiring Grillot to parrot magic words to no purpose, and putting form over substance.

directed-verdict motion may either be granted or the case reopened if necessary so the missing proof may be offered. *Walker v. State*, 318 Ark. 107, 883 S.W.2d 831 (1994). When the trial court ruled on Grillot's motion for directed verdict, the sufficiency of the evidence as to the elements of accomplice liability to capital murder and the elements of accomplice liability for first-degree murder were being tested. The trial court was given an opportunity to rule on the sufficiency of the evidence as to the elements of accomplice liability. To require the trial court to rule on a motion for directed verdict as to the lesser- included offense in this case is to require a vain and useless act. This we will not do. *Box v. State*, 348 Ark. 116, 71 S.W.3d 552 (2002).

Where intent is at issue, moving for a directed verdict on capital murder due to a lack of evidence of premeditation and deliberation, but not moving for a directed verdict on the intent of purpose required under first-degree murder, means the trial court is never presented with the issue of whether the State presented adequate proof to the lesser intent required in first-degree murder. While the proof in a given case might not be adequate to show the premeditation and deliberation required for capital murder, it might be adequate to show purpose as required for first-degree murder. Because the trial court must be allowed to consider lower intent in lesser-included offenses, this court has required that a directed verdict motion also speak to include lesser-included offenses. *Walker, supra.*

Under the facts of this case, however, the trial court was presented with all the issues it could decide on the directed-verdict motion on accomplice liability, and the issue of sufficiency of the evidence is properly before this court. Grillot was charged with capital murder as an accomplice and tried his case on the theory that he was not involved in the murder in any way. He alleged a lack of evidence of intent of accomplice liability. Intent with respect to the murder was not relevant to his motion based on accomplice liability. One is an accomplice to an offense committed by another if one "with the purpose of promoting or facilitating the commission of an offense" commits one of the enumerated acts such as aiding or encouraging. Ark. Code Ann. § 5-2-403 (Repl. 1997). Grillot either acted with purpose to promote and facilitate Will's murder by Phillips, or he was not an accomplice. In this case, there

was no distinction between capital murder and first-degree murder for the court to consider even if Grillot had included first-degree murder in his directed-verdict motion.

It is also curious that Grillot is now being penalized for not moving for a directed verdict on a lesser-included offense before the trial court even decided whether the instruction was applicable. Grillot would have been refused had he later sought an instruction on first-degree murder because it was contrary to Grillot's theory of the case that he was not an accomplice. *Doby v. State*, 290 Ark. 408, 720 S.W.2d 694 (1986).

. I must also note that there is something profoundly disquieting about a rule that requires a criminal defendant to "anticipate" the issues that may be presented to the jury as is currently required on directed-verdict motions. *See Brown v. State*, 347 Ark. 308, 65 S.W.3d 394 (2001). Naturally, Grillot was not specifically aware of what instructions would be submitted to the jury until the trial court made the decision on instructions after the close of the evidence. The renewal of the motion for directed verdict must occur before the jury is charged. *Cathey v. State*, 351 Ark. 464, 95 S.W.3d 753 (2003); *Robinson v. State*, 348 Ark. 280, 72 S.W.3d 827 (2002); *Willis v. State*, 334 Ark. 412, 977 S.W.2d 890 (1998); *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997); *Webb v. State*, 326 Ark. 878, 935 S.W.2d 250 (1996); *Claiborne v. State*, 319 Ark. 602, 892 S.W.2d 511 (1995); *Marshall v. State*, 316 Ark. 753, 875 S.W.2d 814 (1994). *Walker,* and its progeny appear to require that the criminal defendant guess correctly what jury instructions may later be given. Aside from not making much sense, this requirement is in direct conflict with *Marshall, supra,* and the cases that follow that decision, which require that the directed-verdict motion be brought before the jury is charged. These cases should be clarified. The *Marshall* line of cases appears to state the law correctly with respect to when the directed-verdict motion must be made, and the *Walker* line of cases does not.

The bottom line is that this court has refused to hear Grillot's appeal based on a technicality that has nothing to do with the administration of justice. The rule that a criminal defendant must move for a directed verdict on lesser-included offenses is not being used in refusing to hear Grillot's appeal because Grillot waived his

right to the appeal, or because he failed to bring all the issues before the trial court, but rather, today we hide behind a technicality to avoid doing our job, to avoid reaching the issue, and to avoid giving Grillot the appellate review that our rules, the case law, and common sense declare that he should receive.

### Accomplice Liability

The basis of Grillot's criminal liability is unclear in the majority opinion. It appears that Grillot may be held liable for the murder of Will both on the basis of accomplice as well as direct criminal liability. Only accomplice liability was alleged. The majority states, "Here the act of murder was conceded, and the jury was required to decide whether Grillot acted purposely." It is not clear whether the "purpose" required here by the majority is "purpose" with respect to commission of the murder or "purpose" with respect to facilitating and promoting the murder under accomplice liability. First-degree murder requires purposeful intent, as does accomplice liability.

The jury was instructed that to sustain the charge of first-degree murder, "the State must prove. . .That with the purpose of causing the death of William Jackson, ERIC Z. GRILLOT. . .[as] an accomplice caused the death of William Jackson." In this case, for Grillot to be held liable for first-degree murder, the jury had to find that Phillips acted with the purpose of causing the death of William Jackson. There was never an issue of who killed Will. Phillips confessed to the murder, and Grillot's alleged liability for the murder was based on his status as an accomplice.

A person may commit an offense by his own conduct or by that of another person. Ark. Code Ann. § 5-2-401(Repl. 1997). If criminal liability arises from the conduct of another then liability is based on accomplice liability. Ark. Code Ann. § 5-2-404—403. There is no distinction between the criminal liability of the perpetrator and the accomplice. *Riggins v. State*, 317 Ark. 636, 882 S.W.2d 664 (1994). When two persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002). A participant cannot disclaim responsibility because he or she did not personally take part in every act that

went to make up the crime as a whole. *Davis, supra; Parker v. State*, 265 Ark. 315, 578 S.W.2d 206 (1979). If Grillot is liable for the murder as an accomplice, he is liable for the murder committed by Phillips. The jury's decision on Phillips's intent in killing Will would determine what degree of murder Grillot would be held liable for as an accomplice.

### Capital Murder Instruction

As the majority notes, Grillot argues that the model jury instruction erroneously states the law. However, as the majority also notes, Grillot was acquitted of capital murder. Therefore, a decision of this court with respect to the model jury instruction on capital murder would have no impact on Grillot. The issue is not one of prejudice. Rather, the acquittal on capital murder renders the issue moot. In Arkansas, an issue becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. *Bohanan v. State*, 336 Ark. 367, 985 S.W.2d 708 (1999). Because the issue is moot, it need not be addressed, and therefore, the discussion of harmless error is unnecessary and confusing.

### Jury Instructions on Lesser-Included Offenses

This case includes the issue of whether the trial court erred in instructing the jury on the lesser-included offense when Grillot argued that he had no involvement in the murder. This court has never answered the question of whether the trial court is obligated under Ark. Code Ann. § 5-1-110 (Repl. 1997), to instruct on lesser-included offenses when the defendant does not want the instruction. *See State v. Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995). The dissent in *State v. McCormack*, 343 Ark. 285, 34 S.W.3d 735 (2000), also notes that the issue has never been addressed by this court. Although the issue has not been addressed in the past because it was raised by the State, and the appeal was declined under Ark. R. App. P.—Crim. 3, the issue is now raised by a criminal defendant and should be addressed by the court. The majority has discussed the issue as if this were an appeal by a criminal defendant who requested, but was denied a lesser-included instruction. That is not the case. Here, the issue involves an instruction requested by the State.

The majority cites *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001), for the proposition that a lesser-included offense instruction is appropriate when it is supported by even the slightest evidence. *Britt, supra,* is not on point. The slightest evidence analysis in *Britt* refers to a request for an instruction by a criminal defendant. A criminal defendant is entitled to an instruction whenever the slightest evidence exists to support it. Whether the State is likewise entitled to an instruction when the slightest evidence supports it is a question that has not been answered by this court.

*Doby, supra,* also cited by the majority, involves a request by a criminal defendant for an instruction. In *Doby,* this court noted that Doby, in denying any involvement in the crimes, was taking an all or nothing approach in his case, and therefore, there was no rational basis for instructing the jury on a lesser-included offense. Similarly, in *Roberts v. State*, 281 Ark. 218, 663 S.W.2d 178 (1984), this court held that where the appellant denied any theft whatever, his request for an instruction on the lesser-included offense of theft by receiving was not rational, and the trial court committed no error in refusing to instruct the jury on the lesser-included offense. In *Brown v. State*, 321 Ark. 413, 903 S.W.2d 160 (1995), the case involved unlawful delivery of cocaine. In *Brown,* the appellant's proof established that she was elsewhere and innocent of participating in the cocaine transaction. The court held that it defies common sense to give the jury the lesser-included instruction on possession of cocaine that she requested. The court stated: "In other words, if Brown was not present when the drug sale occurred, she logically could not be present and participate in a lesser offense. Such a proffered instruction could do nothing but confuse a jury. Thus, we hold the trial court was correct in refusing it." *Brown,* 321 Ark. at 416. In another case where the charge and proof by the State were for the actual delivery of marijuana, there was no rational basis for instruction on the lesser-included offense of possession requested by the appellant. *Whitener v. State*, 311 Ark. 377, 843 S.W.2d 853 (1992).

Section 5-1-110 provides that the trial court is not obligated to instruct on a lesser-included offense unless there is a rational basis for concluding that the criminal defendant might be acquitted of the crime charged and convicted of the lesser-included offense. The cases cited above arise from requests by criminal

defendants for instructions on lesser-included offenses. This court must address the issue of whether the State is entitled to an instruction when there is a rational basis for doing so. The majority has not provided this analysis or answered the question posed by this issue. *See Jones, supra; MacCormack, supra.*

Based on the foregoing, I respectfully dissent.

THORNTON, J., joins.

CORBIN, J., not participating.